IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-_____-____-____

CHARLES CALDWELL, and
VICKI CALDWELL,

Plaintiffs,

v.

THE COUNTY OF PARK, a body corporate and politic and a political  subdivision of the
State of Colorado,
FRED WEGENER,
MONTE GORE,
GREGORY S. FLINT,
STEVEN GROOME,
SHAWNA WHITEOWL, and
MARK DAMON

Defendants.

## COMPLAINT and JURY DEMAND

COMES NOW the Plaintiffs, Charles "Chuck" Caldwell and Vicki Caldwell, by
and through their undersigned counsel, and complain as follows against the Defendants
Fred Wegener ("Wegener"), Monte Gore ("Gore"), Gregory S. Flint ("Flint"), Steven
Groome ("Groome"), and Park County, State of Colorado ("Park County"), [collectively
referred to hereinafter as the "County Defendants"], and Shawna Whiteowl ("Whiteowl"),
and Mark Damon (Damon"), [collectively referred to hereinafter as the "Civilian
Defendants"]:

I.      NATURE OF THE ACTION

1.      This case arises from the firing by Park County, State of Colorado, of both
Plaintiffs, who had been employees of the Park County Sheriff's Office.  Plaintiffs here sue
Park County and each of the individual defendants under 42 U.S.C. §§ 1983, 1985 and

1988, alleging that the Plaintiffs were discharged on mere pretextual grounds, in retaliation for their exercise of their First Amendment rights of speech and assembly,  and the right to petition the government in the form of supporting candidates of their choice for public office.  The Plaintiffs allege that not only have they been slandered and libeled as part of a fraudulent "investigation" done against them by Park County and its officials but that the Plaintiffs have been deprived of liberty interests without due process of law, never being given any opportunity in a meaningful hearing to refute the wholly false and severely damaging information related in the report of this investigation.  The federal allegations against Defendants Whiteowl and Damon are that they willfully participated in joint activity with the County Defendants in order to deprive the Plaintiffs of their liberty interests.  After terminating these Plaintiffs' employment with the Park County Sheriff's Office, these Defendants then caused this defamatory report to be published wrongfully both in the personnel records of the Plaintiffs and to a local public newspaper, causing their good names, reputations, honor and integrity to be impugned, affecting their future employability as well.

State law causes of action claimed in this matter include Defamation, Intentional Infliction of Emotional Harm, Invasion of Privacy, and an Unpaid Wage Claim.

## II.        JURISDICTION AND VENUE

2.        This action arises under 42 U.S.C. § 1983 *et seq*., as hereinafter more fully appears.  Accordingly, this Court has Federal question jurisdiction over the court claim in this case.  See, 28 U.S.C. §§  1331 and  1343(a)(1).

3.        This Court has supplemental jurisdiction over Plaintiffs' pendent State law claims pursuant to 28 U.S.C. § 1367(a).

4.        Venue and personal jurisdiction over each Defendant is proper in this judicial district because (a) all Defendants reside in the State of Colorado and within this Court's judicial district; (b) a substantial part of the events giving rise to the claims of this Complaint occurred in this judicial district.  See, 28 U.S.C. § 1391(b)(I) and(II).

## III.        PARTIES

5.        All of the aforenamed Defendants were residents of the State of Colorado at all times pertinent to this action, and all of the actions of the defendants complained of in this action took place within the State of Colorado.

6.        Defendant Park County is a body corporate and politic and a political  subdivision of the State of Colorado.

7.        Defendant Wegener at all times pertinent to this action, was the elected Sheriff of Park County, and was the direct decision maker responsible for assigning and approving the "investigation" of, and firing of Mr. Caldwell, and one of the Defendants responsible for the publication of the defamatory material to the personnel records of the Plaintiffs and to a public newspaper.

8.        Defendant Undersheriff Monte Gore was a supervisor of Plaintiff Vicki Caldwell and was directly responsible for the disciplinary sanctions imposed upon her as hereinafter alleged. He also was directly involved in delegating and encouraging Defendant Flint in his authorship of the offending "investigation" report.

9.        Detective Gregory S. Flint, at all times pertinent to this action was a detective employed by Defendant Park County, and as such directly conducted the investigation of the Plaintiffs, and was directly responsible for drafting and initially publishing the false information about the Plaintiffs to other County officials.

10.        Defendant Groome at all times pertinent to this action, was the County Attorney for the Defendant Park County, who, according to Defendant Flint's writings, directly assisted and supervised Defendant Flint in the so-called investigation. He participated in the failure to provide proper notification and a meaningful hearing to either Plaintiff prior to or at the time of their discharge.  And, finally, he also assisted in causing the false statements contained in the so-called investigation report to be published both in the personnel records of the Plaintiffs, and to a local newspaper.

11.        Defendants  Shawna Whiteowl and Mark Damon have been identified as the so-called "confidential informants" referred to as such in the investigative report the subject of this action, telling Detective Flint a number of patently false and slanderous things about the Plaintiffs in order to have him convey these mistruths to his superiors, all with the design of getting the Plaintiffs fired from their jobs.

IV.    FACTS

12.          On February 22, 2006, Plaintiff Chuck Caldwell was fired from his
job with the Park County Sheriff's Office by Defendant Wegener, as the culmination of
events taking place over the prior approximately four months.  Mr. Caldwell's firing was
officially on the pretext that he had lied on his job application with Park County by stating
that he previously had worked in a reserve officer capacity with the Forrest Park Police
Department in Oklahoma.

13.          The firing of Mr. Caldwell was conducted without advance notice
to him of even the general nature of the charge for which he was fired. Plaintiff Chuck
Caldwell was not told, even at the time of the firing, how it was thought that he had
"lied." It was only later, in making requests under the Colorado Open Records Act, that he
for the first time learned of the so-called lie involving the Forrest Park Police Department.

14.          At no time was Mr. Caldwell given a meaningful opportunity to
refute the false allegation that he had lied.   The firing was done without benefit of a
meaningful hearing in front of an independent arbiter, and was done wholly without
compliance with either the Park County Employee Policy and Procedures Handbook, or
the published policies and procedures of the Sheriff's Office itself.

15.          If he had been allowed any modicum of procedural due process,
Mr. Caldwell could have provided witnesses from the Forrest Park Police Department to
provide testimony and/or affidavits that he in fact had performed work for that agency.
These witnesses would have included Jeff Tucker, the Forrest Park Chief of Police
himself.

16.          Plaintiff Vicki Caldwell had been the Business Manager for the Park
County Sheriff's Office.  She was disciplined by the Park County Sheriff's Office and
Defendant Undersheriff Gore, without any hearing being held at all, for purportedly
accepting a reimbursement check made out to the County from another County employee,
Undersheriff Don Anthony, for  a personal expense mistakenly put on a County credit
card.  That County employee at the time was generally considered a likely candidate to run
for County Sheriff against Sheriff Wegener in the next County elections.  Both Plaintiffs
Caldwell supported Mr. Anthony.

17.         The disciplinary action taken by Defendant Gore was to "dock" Ms. Caldwell several days pay and to require her to submit to the humiliation of requiring her to leave her office door open to allow her  every movement to be monitored by her fellow employees.  More importantly, Ms. Caldwell was instructed that she could tell no one the reason for her discipline, and that she was to have no contact whatsoever with Mr. Anthony, who again was considered to be a political opponent to Mr. Wegener.  Such rules, personal only to her, clearly were intended to suggest that Plaintiff Vicki Caldwell was an untrustworthy employee to be watched at all times by her co-employees, and to preclude her from participating in her constitutionally protected rights to support whatever candidate in the election she wished.

18.         As such, the rules personal only to Ms. Caldwell created a hostile and unhappy environment unsuitable for her to continue her employment, which she was forced to quit.

19.         Only after the firing of Mr. Caldwell, and Mrs. Caldwell's constructive firing, did the Plaintiffs obtain for the first time through an Open Records Act request in March, 2006, a copy of the report the subject of this action.  Only then did the Plaintiffs Caldwell realize that their discipline was in fact the result of this report, written by Defendant Detective Flint following a so-called "investigation," alleging extensive criminal behavior on the part of both Plaintiffs, which information was completely false at all times pertinent to this action.  The investigation report by Defendant Flint was an eight page document entitled, "Webber Park Investigation/Brief Synopsis,"  which he caused to be circulated within the Defendant County's Sheriff's Office and to the County Attorney. A copy of this "Webber Park Investigation/Brief Synopsis" is attached as Exhibit 1 to this pleading and incorporated herein by reference.  Throughout this pleading it is referred to as the "investigation" report, or simply "report."

20.         In this report, which is a rather rambling and loosely organized narrative of his "investigation," Defendant Flint states in conclusory terms that Vicki and Chuck Caldwell, the Plaintiffs in this action, are "involved or loosely affiliated with ongoing criminal activity within the Webber Park area" (Exh. 1 -- page 2); that Chuck Caldwell was "actively involved in a large scale poaching operation" (Exh. 1 -- page 2); that Vicki Caldwell "had knowledge of the ongoing criminal activity" of her husband (Exh.

1 -- page 3); that "Chuck Caldwell had purchased marijuana" (Exh. 1 -- page 5); that Chuck Caldwell had "gone by and questioned witnesses in an active harassment case" (implying witness intimidation, Exh. 1 -- page 7);  that "a functioning conspiracy type ring is currently in operation at the Park County Sheriff's Office…to intimidate witnesses and leak information to a larger criminal conspiracy outside this agency" (Exh. 1 -- page 8); and that Detective Flint has knowledge of "many more potential crimes and other unethical acts which have occurred" (Exh. 1 -- page 8).

21.        None of these allegations is true.  No reliable, corroborated evidence has ever existed or is ever cited in this report to support such irresponsible and defamatory statements: Not one shred of real evidence.  There are no named direct, first-hand eye witnesses cited.  None of the information from confidential informants ever has been put into search warrant affidavits to obtain corroborating evidence. Virtually all discussions with so-called witnesses are paraphrased without any exact quotations. And for the most part, these discussions are unattributed hearsay, rumor, innuendo, and/or gossip.  Frankly, the report reads more like a provocative, fictional, day time "soap opera" than a professional police report.

22.        In a four page supplement entitled "Witness/Victim List of the Webber Park Investigation" attached hereto as Exhibit 2, Detective Flint names as his command staff person Defendant Gore, and that his "case control officer" is Defendant County Attorney Groome, who he writes, also serves as his "evidence control person,". . ."maintaining the original copies of photographs, VHS audio and video cassette tapes in accordance with his training and experience as an attorney" (page 2, Exhibit 2).

23.        The confidential informants listed in the Plaintiffs' Exhibits 1 and 2 have been determined to be Defendants Whiteowl and Damon, neighbors of the Plaintiffs in Webber Park, since they have now admitted to others their role in this matter.  Their statements made to Detective Flint were just the most recent in a litany of complaints made by these two individuals, all of which have proven unfounded.  For whatever reason, these two individuals have felt it necessary to harass and slander the Plaintiffs and the rest of the residents of Webber Park for a number of years, including repeatedly filing fallacious criminal complaints against these Plaintiffs and others.

24.        The pattern of all of this harassment was well known to all of the

County Defendants prior to the actions complained of in this case.  It was also known that statements attributable to these civilian defendants were not reasonable grounds upon which to base even search warrant requests, much less disciplinary actions or other conduct against these Plaintiffs.  These County Defendants knew, for example, that over a span of many years, Defendant Whiteowl has claimed that "her neighbors would ambush her," that "everyone was out to get her," and even that her neighbors were "sodomizing her goat."  She has yelled at kids walking down the public road, not on her property, and threatened to shoot the dog that was walking with them.  She has sought restraining orders against her neighbors, threatened three separate employers with sexual harassment claims.

25.        Despite the fact that all of these Civilian Defendants' information was reported as gospel by Detective Flint for the purposes of his so-called investigation, no criminal action ever was filed against any of the people arising from this eight page report.  No search warrants or arrest warrants were ever sought or granted based upon the information in the eight page report.  Nevertheless, at the beginning of the campaign season in 2006, the County Defendants released this report to a local publicly distributed newspaper, all apparently in an attempt to compromise the political aspirations of Don Anthony, who was gearing up to run for the office of Sheriff in the 2006 election.

26.        The disciplinary actions taken against the Plaintiffs, and each of them, were the direct result of the slander and libel committed by Defendants Whiteowl and Damon and its republication by Defendant Flint.  Neither Exhibit 1 or 2 were disclosed or made available to the Plaintiffs prior to their discipline, nor were they given any opportunity whatsoever to refute the charges contained therein these allegations were made a part of each Plaintiff's personnel records with the County.  They were distributed to a local newspaper, severely stigmatizing the good names, reputations, honor and integrity  of these Plaintiffs.

27)

27.        As a direct and proximate result of the behavior of the Defendants and each of them, the Plaintiffs have been denied not only their existing employment, but have had their good names, reputations, honor and integrity impugned by false information obviously used in the termination of both of these individuals as County employees.  Now

that it has been made public or otherwise published by the Defendants, it forecloses other employment opportunities.  As such, Defendants have been denied a significant liberty interest without due process being followed and to their substantial damage.

28.     As a direct and proximate result of the behavior of all Defendants, Plaintiffs and each of them have suffered past and future loss of earnings; past and future damages to their earning capacity; past and future emotional distress and emotional pain and suffering, even leading to a heart attack suffered by Mr. Caldwell and an ongoing health problem causing him further economic loss; past and future loss of enjoyment of life; and in general, loss of their good name and repute in the community.  Plaintiffs claim losses totaling One Million Dollars ($1,000,000.00).

29.     The actions of all County Defendants in this action were performed willfully and wantonly within the scope of their official duties and under color of their State sanctioned  authority.  Specifically, Plaintiffs base this allegation on the clear choices exercised by Defendant Flint in writing a report containing such baseless allegations of criminality directed at each of the Plaintiffs, obviously knowing the effect such a report would have on the present and future employability of these Plaintiffs with Park County; the direct assistance, encouragement and approval given to Defendant Flint as to the writing of such a report by Defendants Wegener, Gore, and Groome; the (constructive) firing of the Plaintiffs and each of them based upon these allegations by Defendants Wegener and Gore, and with the cooperation and assistance of Groome, at a time they each clearly knew these allegations were unsupported by any substantial evidence, with a total denial of procedural due process refusing the Plaintiffs a meaningful opportunity to rebut these allegations with proof of their own; and, of course, the purposeful behavior of the Defendants and each of them in first creating this information and then causing it to be published both in the personnel records of the Plaintiffs, and given to a local newspaper, for the purposes of their own political gain.

FIRST CLAIM FOR RELIEF

22 U.S.C § 1983, ET SEQ.

ALL DEFENDANTS

30.        Plaintiffs hereby incorporate by reference all of the foregoing allegations as though the same were set forth at this point in full.

31.        All of the conduct complained of against the County Defendants was committed by each of them while acting under color of State Law in their capacity as law enforcement officers and/or officials of the government of Park County, State of Colorado.

32.        The conduct complained of against Defendants Whiteowl and Damon was performed by each of these so-called civilian Defendants, as willful participants in joint activity with the Defendant officials and officers of Park County, with the intent to violate the Plaintiffs' due process rights.

33.        Detective Flint and the civilian Defendants acted in concert as part of a joint activity to place defamatory information before the public employer of the Plaintiffs, and the County Defendants thereafter acted in concert to use this defamatory information to terminate the employment of the Plaintiffs, in the process denying them due process guaranteed them by the United States Constitution, Amendments 5 and 14, damaging not only their present employment status, but compromising their future employability as well, and in an effort to chill these Plaintiffs' rights under the First Amendment to the United States Constitution to support a candidate for the office of Sheriff which these Defendants opposed.

34.        Plaintiffs have suffered, as a direct and proximate result of the behavior of these Defendants and each of them, damages as heretofore alleged, in amounts to be proven at trial.

<u>SECOND  CLAIM FOR RELIEF</u>

<u>DEFAMATION PER SE</u>

<u>DEFENDANTS WEGENER, GORE, FLINT,</u>

<u>GROOME, WHITEOWL, AND DAMON</u>

35.        Plaintiffs hereby incorporate by reference all of the foregoing allegations as though the same were set forth at this point in full.

36.        The Defendants Wegener, Gore, Flint, Groome, Whiteowl and Damon published or caused to be published the above alleged statements, the gist of which are contained in Plaintiffs' Exhibits 1 and 2 attached to this Complaint, alleging in part that the Plaintiffs are engaged in criminal conduct.

37.        Those statements contained in Exhibits 1 and 2 as attached to this Complaint were false at the time they were made.

38.        At the time of publication of those statements, the Defendants and each of them knew that the statements were false or made the statements with reckless disregard as to whether they were true or false.

39.        The defamatory statements published by these Defendants have caused the Plaintiffs actual damage as hereinabove alleged, in amounts to be proven at trial.

<u>THIRD CLAIM FOR RELIEF</u>

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

<u>DEFENDANTS WEGENER, GORE, FLINT,</u>

<u>GROOME, WHITEOWL, AND DAMON</u>

40.        Plaintiffs hereby incorporate by reference all of the foregoing allegations as though the same were set forth at this point in full.

41.        Defendants Wegener, Gore, Flint, Groome, Whiteowl and Damon engaged in extreme and outrageous conduct, all as heretofore alleged.

42.         These Defendants and each of them did so recklessly or with the intent of causing the Plaintiffs severe emotional distress.

43.         The Defendants and each of them, by their conduct, caused the Plaintiffs severe emotional distress.

44.         As the direct and proximate result of the behavior of the Defendants and each of them, the Plaintiffs have suffered damages as hereinabove alleged, in amounts to be proven at trial.

<u>FOURTH CLAIM FOR RELIEF</u>
<u>INVASION OF RIGHT TO PRIVACY</u>
<u>DEFENDANTS WEGENER, GORE, FLINT,</u>
<u> GROOME, WHITEOWL, AND DAMON</u>

45.         Plaintiffs hereby incorporate by reference all of the foregoing allegations as though the same were set forth at this point in full.

46.         The Defendants, Wegener, Gore, Flint, Groome, Whiteowl and Damon, and each of them, made certain facts in the private lives of the Plaintiffs public.

47.         At the time of the disclosures, the Defendants and each of them knew or should have known that these facts being disclosed were private.

48.         A reasonable person in the position of Plaintiffs would find disclosure of these facts very offensive.

49.         As a direct and proximate result of the Defendants actions of publicly disclosing these facts, Plaintiffs have directly and proximately suffered damages alleged hereinabove, in amounts to be proven at trial.

## FIFTH CLAIM FOR RELIEF

## FAILURE TO PAY WAGES

## DEFENDANT PARK COUNTY

50.          Plaintiffs hereby incorporate by reference all of the foregoing allegations as though the same were set forth at this point in full.

51.          At the time of their respective firings, unpaid wages were due these Plaintiffs through to the actual date of their respective terminations, and those wages have never been paid to these Plaintiffs.

52.          The Plaintiffs have made demand upon the Sheriff's Office for these wages, which demand Park County has failed or refused to acknowledge.

53.          The amount of wages claimed under this Wage Claim cause of action totals $980.00.

## PRAYER FOR RELIEF

The Plaintiffs hereby respectfully request of this Court an award of One Million Dollars ($1,000,000.00) for all actual damages they have incurred as a result of the behavior of the Defendants and each of them, these damages to be awarded jointly and severally pursuant to Colorado law, for punitive damages as provided under Federal law, for all costs and attorney's fees as provided for by either State or Federal law (in particular 42 U.S.C. § 1988), for both prejudgment and post judgment interest as provided by law, and for such other and further relief as this Court deems proper in the premises. Plaintiffs reserve a claim for punitive damages under the State law claims until such time as discovery may be completed and permission of the Court for the addition of such a claim has been received.

## JURY DEMAND

Plaintiffs hereby respectfully request trial by jury for all claims in the within Complaint for which such is appropriate and allowed at law.

Respectfully submitted this 22nd day of February, 2007

_/s/ James A._

_Reed_____

James A. Reed
James A. Reed, P.C.
320 S. Cascade Avenue
Colorado Springs, CO  80903
Tel. (719) 636-9343
Fax (719) 633-2355
**_Attorney for Plaintiffs_**

**I)      VERIFICATION**

STATE OF COLORADO       )
                        )  ss.
COUNTY OF EL PASO       )

      Charles Caldwell, of lawful age, being first duly sworn upon oath, does depose and state that he has read the foregoing allegations of fact and the same are true and correct.

*Original has been signed and is on*

*file*

*at the office of Plaintiff's counsel*

*/s/ Charles Caldwell*_____
Charles Caldwell

      Subscribed and sworn to before me this 22nd day of February, 2007, by Charles Caldwell.

      Witness my hand and official seal.

      My commission expires: 12/10/09.

*Original has been signed and is on*

*file*

*at the office of Plaintiff's counsel*

*/s/* Julia L. Vendeland_____
Julia Vendeland
Notary Public
320 S. Cascade Avenue
Colorado Springs, CO  80903
Tel. (719) 636-9343

## I)   VERIFICATION

STATE OF COLORADO          )
                           )  ss.
COUNTY OF EL PASO          )

     Vicki Caldwell, of lawful age, being first duly sworn upon oath, does depose and state that she has read the foregoing allegations of fact and the same are true and correct.

*file*
         *Original has been signed and is on*

         *at the office of Plaintiff's counsel*

         */s/ Vicki Caldwell*
         Vicki Caldwell

     Subscribed and sworn to before me this 22nd day of February, 2007, by Vicki Caldwell.

     Witness my hand and official seal.

     My commission expires: 12/10/09.

*file*
         *Original has been signed and is on*

         *at the office of Plaintiff's counsel*

         */s/* Julia L. Vendeland
         Julia Vendeland
         Notary Public
         320 S. Cascade Avenue
         Colorado Springs, CO  80903
         Tel. (719) 636-9343