# *Webber Park Investigation / Brief Synopsis*

In mid September 2003, I was directed by Sgt. Bonnelycke to initiate an investigation with Ron Zaccagnini of the Colorado Division of Wildlife. This investigation originally involved a large scale poaching operation in the Webber Park area. This is a somewhat remote semi organized subdivision located in the Southeast central portion of Patrol District I.

The subdivision is geographically located in a large box type canyon surrounded by mountain peaks between nine and ten thousand feet. The valley floor is mainly flat with some slopping grade. The edges of the valley floor are heavily treed where it begins to meet elevation.

The roads are relatively flat and well maintained. There is no hard line telephone or power service located in the valley. However there is good cellular telephone service due to the valley being in the direct line of sight of Badger Mountain (a primary cell site for the south end of Park County). There are four primary routes into the Webber Park Subdivision proper. They are as follows;

- *Park County Road 652 – Through Mosses Pass (North end)*
- *USFS 232 – Through Thorpe Gulch (Southeast end)*
- *USFS 214 – From west side of ridge line into valley*
- *Unmarked Road – Between edge of subdivision and Puma Hill(s) (Northeast corner of valley).*

During the investigation, it became clear that at least three of the suspects were producing methamphetamine. The main three suspects (please see attached list) were/are supported by a group of six to seven other accomplices that assist in this activity. These additional suspects appear to provide ; security, surveillance, distribution of the methamphetamine and marijuana. They also assist in setting up the lab and finding safe places to hide it when it's broke down.

It was also mentioned that three of these suspects participate in lewd and deviant sexual acts upon themselves and animals. As the C.I. continued to collect information, it became apparent that Jack Sedowsky, George Porter and Wayne Waydora were extremely into "snuff pornography." It was reported that these suspects were fascinated with the "snuff" films owned by Jack Sedowsky.

These types of discussions with the C.I. would generally lead into other conversations regarding a Native American Indian female referred to as Sophie. Sophie was described as a middle-aged woman between the ages of 38-48 years old. Sophie is reported to have been from a north-central Indian Reservation, possibly in the Michigan or Wisconsin area.

Sophie would reportedly move up and down the Webber Park Valley in a "tee-pee" from early spring to late fall. She would sketch, paint and participate in other crafts as it related to her Native American heritage. During the severe colder months of the year, she would "winter up" with one of the single males from the Webber Park valley to get through the season. Discussion of Sophie would generally come up when the men of the Valley would get together to drink alcohol and smoke Marijuana.

At one of these such gatherings, several of the male suspects became drunk and high. Wayne Waydora stated to Jack Sedowsky; "Well that's one body (nodding towards Sophie's valley) that

*Page (1.) of (8.)*

## *Webber Park Investigation / Brief Synopsis*

will never be found, right Jack." Jack Sedowsky reportedly became furious and told Waydora to "Shut the fuck up."

C.I. 2005-05 was able to gather information later from Wayne Waydora. Waydora stated that Jack and his brother had a terrible fight over who was going to stay with Sophie for the winter. The next day she turned up missing. The following season a mine was mechanically collapsed with heavy equipment. This mine is located near the area called Sophie's Valley. Sophie's Valley is located at the southeast corner of the Webber Park valley. A short distance from there due west is where the three mines are located. One of the mines appears to have had some recent activity around it.

This incident, if it occurred at all, may be at least ten years or more ago. I have discreetly contacted one law enforcement officer from that time period, who recalls nothing of a Native American girl gone missing. I have contacted at least one subject who has direct knowledge and memory of a woman living in a "tee-pee" in that period of time. This subject checked with siblings and cousins who also remember the "tee-pee" and woman in the valley. I have not yet pursued this tract of interviewing subjects because I did not want to prematurely reveal their identities.

On 11-08-03, at approximately 1500 hrs., I met with Under Sheriff Anthony to brief him on the Webber Park Investigation. My direct supervisor was also present at this meeting, Detective Sgt. Bonnelycke. This briefing occurred in the old Under Sheriff's Office at the main building located at 1180 Park County Road (16), Fairplay, Colorado.

During this conversation I explained to the Under Sheriff the nature of the Confidential Informants (CI 2005-5) complaint. That suspect(s) were involved in large scale poaching operations, Methamphetamine production and Marijuana Cultivation.

During this conversation I advised the Under Sheriff that I had recently requested the assistance of the Colorado Bureau of Investigation (CBI). CBI Agent Larry Brown had assisted me in the long range photographing of the Webber Park area and potential suspect(s) residences.

As I continued with my briefing I explained the involvement of two civilian individuals who were involved or loosely affiliated with the ongoing criminal activity with in the Webber Park area. The two individuals were identified to me as follows;

- Vicky Merritt (Goes by "Common law" name of Vicky Caldwell)
- Chuck Caldwell

I know both of these individuals through routine patrol functions in Patrol District I. I have also seen both parties at social gatherings in the Lake George area.

I advised Under Sheriff Anthony that Chuck Caldwell was actively involved in a large scale poaching operation. Under Sheriff Anthony's reply was; " I could see that of Chuck." I also advised that Chuck Caldwell had also been implicated in the ongoing Methamphetamine operation possibly as a "lookout." There was no response from Under Sheriff Anthony.

## *Webber Park Investigation / Brief Synopsis*

Under Sheriff Anthony then stated; "What about Vicky?"   I advised that she had knowledge of the ongoing criminal activity.  At the initial time or beginning of this investigation in 9/2003 it was only implied that Vicky Merritt (Caldwell) had some knowledge of the poaching operation, but no other direct involvement had yet been established.

Under Sheriff Anthony stated; "Well I'm thinking of hiring her as our book keeper.  I've worked with her at "Outfitters Days" and I have never had any problem with her. What do you guys think about that (to Sven and I)." Neither one of us had a reply to that question.  On December 22nd, 2003 Vicky Merritt (Caldwell) was hired as the Park County Sheriff's Office as Finance Director.

Sometime during the week of December 3rd, 2003, I received a telephone call from Ron Zaccagnini regarding the Webber Park Investigation.  Zaccagnini advised that there had been a leak in the investigation and that; "Mark wants his maps back as soon as possible."

These maps appeared to contain fairly accurate additions (made by the CI) to a Webber Park Subdivision Plat map showing the locations of; Meth labs, potential storage of Meth equipment, suspects residences and routes / observation positions utilized by the suspects during Methamphetamine production.  Additionally there were locations of a potential Marijuana Grow operation, poaching locations and locations of valley residents that had been victimized due to burglary and thefts.

Due to a mechanical failure with the blueprint copier in the County Clerks Office, I was unable to safely copy the map. I returned the map to Zaccagnini as requested.

From mid December 2003 until June of 2004 scattered intelligence was received about the Webber Park area, if any information was gained at all.  In June of 2004 bits of information regarding the Webber Park suspects began to trickle in from District I Patrol Deputies.

Information such as the Webber Park crew has moved their freezers and other related equipment to the "Happy Ass Ranch" off of USFS 250.  That the new group of people at the ranch off of USFS 250 are "meth cooks" out of Teller County and the Colorado Springs area.

Names such as (Skip Vena and the last name of Quist) began to show up from patrol traffic stops or generalized discussions with Deputies from that district.  By late fall I had heard of drug activity and the sale of narcotics being sold from several of the local businesses in the Lake George area (Patrol District I).

Throughout this period of time, (Winter of 2005), I had met with Sgt. M. Brown, Patrol Sergeant of District I, on several occasions.  Sgt. Brown had passed on the original intelligence of the poaching operation in 2003.  We both felt that by the relocating of the freezers, generators and other poaching equipment to the "Happy Ass Ranch," that the two criminal enterprising groups had stronger ties to each other than we had originally first suspected.

It was agreed between ourselves to keep each other appraised of the "Happy Ass Ranch" group of suspects. We would hope for a DUI arrest or some other type of intelligence that would give us an

## *Webber Park Investigation / Brief Synopsis*

"in" for a criminal investigation. It was also agreed that after the snow broke in 2005, Sgt. Brown and I would attempt to "scout" the area surrounding the ranch for possible surveillance locations.

In April 2005, I received a telephone message from Detective Rivera from the Teller County Sheriff's Office. Detective Rivera had intelligence regarding the "Happy Ass Ranch" suspects. Please see second notebook regarding "Happy Ass Ranch" Intelligence. Due to severe inclement weather, the Detective from Teller County was never able to make that meet.

I did make arrangements to meet with Patrol Cpl. Jason Mikesell (Teller County SO) who had access to intelligence already collected by his agency. During our conversation Cpl. Mikesell advised me that the suspects involved (Happy Ass Ranch Group) were serious about protecting their Meth operations. That these suspects were routinely armed and utilized "booby traps". Cpl Mikesell advised that he had almost stepped on an explosive device himself, during a previous raid. Please see narratives attached to Colorado dossiers in "Happy Ass Ranch" notebook.

On 06/22/05, at approximately 1120 hrs., I was asked to report to Under Sheriff Anthony's office. Under Sheriff Anthony's office is located on the second floor of the new wing, 1180 Park County Road 16, Fairplay, Colorado. During this meeting, I was ordered to reopen the Webber Park Investigation.

I was also advised that (CI 2005-05) had contacted the FBI; that he-Don Anthony, had received a telephone call from an Agent inquiring if we had looked into this at all. Under Sheriff Anthony also advised that the FBI agent had contacted Ron Zaccagnini with the Division of Wildlife, asking him the same questions regarding the Webber Park Investigation.

I advised Under Sheriff Anthony that the original investigation had been canceled by DOW Officer Zaccagnini himself. It was at this point that I was directed by Under Sheriff Anthony to work with DOW Officer Zaccagnini on this investigation. Under Sheriff Anthony said that some guy said that people in Webber Park had poisoned his dog and made threats or something. Undersheriff Anthony then stated; "Sven has got a tape or something."

Under Sheriff Anthony then stated; "Regarding Chuck." (Pause) "As far as him talking to them, I don't think that was criminal. I think he was just saying, 'you guys need to knock that stuff off." The Under Sheriff then said; "Don't discuss any of this with Sven, I just want to eliminate him. I'm not saying he's involved." Then there was another long pause in the conversation.

These two statements struck me as being the most unusual out of the group. I was being asked to rejoin an investigation that for all intensive purposes had been shut down for over two years with the exception of the gathering of minor intelligence. Why would someone open the conservation about a former suspect from the original case (Chuck Caldwell), and make a statement as if they were defending him. I never brought his identity up in this conversation.

Sven Bonnelycke is my direct supervisor. Why was I being ordered to circumvent the "chain of command." Until this point in time he had been the only supervisor that had been directly supporting my investigation.

*Page (4) of (8.)*

# *Webber Park Investigation / Brief Synopsis*

My personal observations at the time were:

- Why is a DOW Officer inserting himself back into an investigation, he himself had canceled?
- Recent intelligence had advised that the poaching operation had been relocated to the "Happy Ass Ranch." Intelligence also reported that the poaching operation was currently inactive.
- Is Methamphetamine production within the scope of the Division of Wildlife's general duties?

At the end of this meeting with Under Sheriff Anthony, he began to advise me about a large "rave party" located at the "Happy Ass Ranch." This gathering was known as APOGAEA." APOGAEA is a close relative to the "Burning Man" rave parties, which have been held in the Four Corners region of the U.S. Reportedly drugs, alcohol and deviant sex flow freely at these gatherings.

Under Sheriff Anthony also advised me that he was leaving for four to five days. He also advised that a detective form the Colorado Springs Police Department had contacted him about this "rave party." I felt that notifying me one day before the actual event started, gave us little or no time to plan for or prepare a "team ops" to attempt drug interdiction or gain intelligence. Please see attached APOGAEA "team ops plan."

## Follow up Investigation/Observations:

During my follow up investigation of this "Rave Party," I found the approving authority from the Park County Sheriff's Office for the County Permit, was Under Sheriff Anthony. The permit was applied for several weeks in advance of the event. Why had "no" intelligence been given to the Patrol Division or Investigations Unit.

This major event was approximately one and one half miles from the Under Sheriff's home and other residents in the area. Why wasn't extra patrol or traffic control requested for the safety of the citizens of that area?

Out of a total of approximately forty-eight traffic stops conducted along the main route to the "rave party," no narcotics of any kind were located. There were two certified narcotic K-9 teams working on this detail.

On June 23, 2005, at approximately 1203 hrs., I met with Ron Zaccagnini from the Department of Wildlife at the "Workstation" located outside of Fairplay. Zaccagnini advised that he was having problems at his house; that the Quists tried to set his barn on fire the other day. He advised that it was the boyfriend/husband of the District Forest Ranger, Sara Mayben. He also advised that Mayben's boyfriend/husband is selling Marijuana and Meth out of the Lake George Bait Shop. **Chuck Caldwell (PCSO) has purchased Marijuana from his bait shop contact as little as eight months ago. This purchase took place in front of CI: 2005-05. The CI, in taped and written statements had referred to this particular purchase by PCSO employee.**

Ron Zaccagnini then said; "Have you said something about putting 'flights up' down there?" I replied yes I had spoke with the other investigators Amy Franck and Sven Bonnelycke. Ron Zaccagnini said; "Well you guys got a leak, cause that's what they said on the message to Mark. Somebody's talking to them." This information was also confirmed on the "Death Threats" tape recording.

## *Webber Park Investigation / Brief Synopsis*

On June 26th 2005, I met with Detective Sgt. Bonnelycke regarding the audiocassette tape he had made of the "death threats to CI 2005-05. Sgt. Bonnelycke advised that he was only able to recover two out of six of the death threats, because the other four threats were missing out of the CI's cell telephone voice mail bank. I asked Sgt. Bonnelycke what happened to the other four threatening telephone calls? Sgt. Bonnelycke replied; "The Under Sheriff and Ron Zaccagnini where supposed to get them. They blew it, I don't know what they did. They said their equipment wasn't working, I don't know. I talked to the 'CI' and I was able to get the last two phone calls. The 'CI' said he had written everything down, so I had him read the threats onto the tape."

Sgt. Bonnelycke gave me the original copy of the audio cassette tape that he had made of the above mentioned "death threats." I reviewed the audio tape and heard several of these threats that had been made to the 'CI.' There was a direct statement made regarding "helicopters flying over" on this audiocassette tape.

From approximately July 1st to September 8th 2005 I have received numerous telephone audiocassette tapes, photographs of potential suspects and written statements from the victims. I have recovered in excess of eight hours of VHS video and audiocassette tapes, which has not yet been transcribed.

Just prior to the aforementioned time frame, I began to pick up rumors and complaints about members of the upper echelon, inappropriately spending and purchases on department issued credit cards. I reported this and other information to Steve Groome, the County Attorney. Several days later I was advised by Steve Groome that I was right, there were several inappropriate expenditures on the Under Sheriff's and Lt. Raschs personally issued credit cards. I was advised that there were several expenditures that were outside the scope of their sworn duties. Some of these expenditures ranged from prices of $ 400.00 (+) for personal items to trips out of the country (Nicaragua) for in excess of $ 3,500.00 (+/-).

I was also advised that a civilian employee has discovered and reported some of these discrepancies to a non-law enforcement entity that is currently conducting an audit. I cannot yet advise to the degree of the audit and if my information overlaps with the information gathered by the civilian entity. Steve Groome has advised that he is available for contact and will assist any higher authority with its investigation of this matter. If any part of this information gathered by civilian and law enforcement personnel is true, then several counts of Official Misconduct and Theft in several ranges may apply to the perpetrators. I believe that Steve Groom and I can guide you to the recovery of these receipts and potential witnesses. Currently I am not in a position to be able to do either.

Through out the course of this investigation I have found that many policies and procedures have been broken on the lower internal end of the spectrum. On the upper end of the spectrum everything from Civil Rights violations to criminal activity. In section (I) of this investigations Notebook, I have placed several copies of inappropriate, unethical and unlawful orders issued to Deputies of the Park County Sheriff's Office. These orders range from; the Under Sheriff ordering a Deputy to drop off a violent schizophrenic person in another county, after he was subdued with narcotics by a nurse at the PCSO Jail, to ordering uniformed officers to take a marked unit (of PCSO) and conduct escorting duties in another jurisdiction at a private event. Once again terms

## *Webber Park Investigation / Brief Synopsis*

from statues such as; Failure to Render Aid and Misuse of Office or Official Misconduct come to mind.

In the last seventy-two hour period, just prior to the completion of this report, I have become aware of two more incidents. One of these incidents involves sexual harassment and intimidated of several female employees. One female employee has reportedly stepped forward and made a complaint to Sheriff Wegener since his return from the FBI Academy. It is unknown the current status of her complaint, but the alleged offender, Under Sheriff Anthony has not been placed on administrative leave with pay or re-assigned, pending the outcome of the investigation. There are several witnessing officers that would come forward to support this report.

The second incident involves the "unlawful arrest" of a seventy-two year old man, in which the subject was arrested, transported to jail and an un-approved "strip search" was conducted upon his person. This arrest was conducted on the authority of a hastily sought Bench Warrant, which was retrieved by Lt. Rasch and officers, at the direction of Under Sheriff Anthony. Under Sheriff Anthony helped design and write the Cattle Grazing Ordenance, which this subject was arrested for. Under Sheriff Anthony claims to be a rancher and grazes cattle in the immediate area of his competitor, the seventy-two year old man that he had arrested. This would appear to be an obvious "conflict of interest" to the benefit of one person or a select group of people.

On September 8th 2005, at approximately 1145 hrs., I was contacted by Deputy Fikejs regarding PCSO Case 2005001202. Deputy Fikejs was visibly upset agitated about something. I asked him if I could assist him with a case. Deputy Fikejs advised that he believed there was a leak with in the department. That someone had leaked the contents of witness statements to potential suspects before they had even been filed. He also advised that Chuck Caldwell (PCSO employce), George Porter(suspect) and Wayne Wydora had gone by and questioned witnesses in an active Harassment case where charges had already been filed.

Chuck Caldwell has been an employee of PCSO for less then five months. George Porter has recently threatened CI 2005-05 (death threats on tape) and CI 2005-08 in person. Wayne Wydora and George Porter are directly linked to Vicky and Chuck Caldwell, who exchange house sitting and attend other social events with Under Sheriff Anthony's family. Under Sheriff Anthony hired both the Caldwells, even after the warnings that Detective Sgt. Bonnelycke and I provided in (2003). Please see Deputy Fikejs attached report and witness statements he has collected to date.

## *Webber Park Investigation / Brief Synopsis*

As a result of this Harassment case, I was able to gain a videotaped interview with CI 2005-08. In this interview the 'CI' describes several criminal episodes and interactions with the above named suspects. I will provide a copy of said interview in this package.

Based upon my past training and experience, I believe that a functioning conspiracy type ring is currently in operation at the Park County Sheriff's Office. That one or more PCSO employees use their position at this department to intimidate witnesses and leak information to a larger criminal conspiracy outside of this agency.

I also believe that Park County Sheriff's Office personnel have utilized their positions (sworn / non-sworn) to steer, impede or deliberately stall and obstruct legitimate investigations being conducted by this agency.

I have many more potential crimes and other unethical acts which have occurred, that I will continue to monitor and collect information.

I am therefore officially requesting the assistance of your Bureau with this investigation. I have been routinely keeping District Attorney Molly Chilson advised of my progress in this investigation.

**Due to the fact I am collecting this information outside the normal accepted department's reporting format, I will use this document as an informal "Offense / Incident Report."**

Detective Cpl. Gregory S. Flint

Date: Oct 4 2005

## *Witness / Victim List of the Webber Park Investigation:*

- <u>Confidential Informant 2005-05</u>:  Victim and witness to several crimes in the Webber Park area.  To include; Possession and Manufacture of Methamphetamine, Thefts and Death Threats made to him/her.

- <u>Confidential Informant 2005-08</u>: Victim of several Harassment type cases over a six to eight year period.  Has been witness to Possession of Methamphetamine and has some knowledge of its production in the Webber Park Subdivision.  Claims to have been threatened by active law enforcement civilians and certified officers.  Most recent case PCSO Number: 200501202 Harassment / Colorado Revised Statue 18-9-111 (1.) (a.).  Please see attached copy of report.

- <u>Person of Knowledge</u>:  Kara Cullen / Probation Officer / 11th Judicial
      Probation Department
      300 4th Street / P.O. Box 504
      Fairplay, CO  80440
      (719) 836-2294
  Has knowledge of this investigation as it was reported to her by her victim client.  Has assisted me in gathering some archived information.  Has also assisted me with identifying other potential "persons with knowledge."

- <u>Person of Knowledge</u>: Sean Paris / Deputy District Attorney / 11th Judicial
      District Attorney's Office
      300 4th Street
      Fairplay, CO  80440
      (719) 836-2080
  Assisted me with securing "Internal Investigations" files involving Undersheriff Anthony.  Has knowledge of DOW Officer Zaccagnini leaking information on a sexual assault cases.  (Mr. Paris has not been interviewed to this point in the investigation regarding this information.)

- <u>Command Staff Knowledge</u>: Captain Gore
      Park County Sheriff's Office
      1180 PCR 16 / P.O. Box 27
      Fairplay, CO  80440
      (719) 836-4343
  Captain Gore was the only member of PCSO command staff available when the report of potential corruption or police misconduct was reported to me again.  I reported my intentions to meet with CI 2005-05 and gain new information and documentation.  It was strongly recommended that I take a "cover team" with me, which I did.  I also asked for permission to meet with

*Page (1.) of (4.)*

*Captain Gore continued;*

Steve Groom (the Park County Attorney) regarding some of the arising legal questions involved in this case. Captain Gore approved this action.

- **Case Control Officer:** Steve Groom / County Attorney
  Park County Government
  Fairplay, CO 80440
  (719) 836-4219

Steve Groom has acted as my "control officer" for this investigation, due to me being under a "direct order" to circumvent the chain of command by Undersheriff Anthony. Once Undersheriff Anthony was directly implicated as one of sources of the information "leaks," I was left without any direct support. I reported my subsequent meetings with the CI to Steve for obvious "Officer Safety" and security reasons.

Steve has also acted in the capacity of an evidence control person. He has maintained the original copies of photographs, VHS video and audiocassette tapes in accordance with his training and experience as an attorney. Currently I am unable to hold evidence in accordance with departmental polices due to the possible discovery of its existence by sworn or civilian personnel of this agency.

- **Assisting Officer:** Glenn Hardy / District II Patrol Corporal
  Park County Sheriff's Office
  1180 PCR 16 / P.O. Box 27
  Fairplay, CO 80440
  (303) 838-4441

Glen as well as the following officers have either covered me on surveillance missions of the Webber Park Investigation or are on "stand by" to cover me should a Meth cook become known or a search warrant is gained.

Glenn was also present with me during the discussion with DOW Officer Ron Zaccagnini after our first surveillance mission. He observed Zaccagnini return a .308 Caliber round to me (which had been removed from my rifle by him) and overheard part of the discussion between us.

These officers were hand picked by me and are SWAT trained or have advance medical training. They were advised that I was looking at a large-scale poaching and methamphetamine operation. I also advised officers that there is other criminal enterprising involved with this case and that a "leak" had occurred approximately over two years ago. I have expressed the dire need to maintain the confidentiality of this investigation.

I have routinely used SWAT Team members to cover me during surveillance and photographing of potential suspect narcotic locations. To the best of my knowledge, none of these officers have attempted to gleam further information regarding this case.

*Page (2.) of (4.)*

<u>Remaining Assisting Officers</u>:  Deputy J. Huffman / District I
Deputy D. Lougheed / District II
Deputy J. Wood / District II
Fire Chief S. Bargas / SWAT Team Medic
(719) 836-3244

<u>Monitoring and Assisting</u>:  Amy Franck / Detective Corporal
Park County Sheriff's Office
824 (A) Castello Ave. / P.O. Box 27
Fairplay, CO 80440
(719) 836-4389

In mid August 2005 after a supervisors meeting, Detective Franck made a statement to me regarding the Undersheriff's racial slurs and other inappropriate remarks during that meeting. I could observe that Detective Franck was struggling with the desire to report this inappropriate behavior, but to whom (what agency).

I was aware of numerous alleged ethical violations, circumvented polices and blocked investigations against civilian employees of the Park County Sheriff's Office. The catalyst of these orders or abuses (the majority), appeared to be originating with Undersheriff Anthony. I approached Detective Franck for her assistance.

I gave her a general/brief overview of the criminal side of my investigation. She advised me of many other unethical orders, policy violations and what appeared to be misuse of authority by Undersheriff Anthony. Detective Franck advised that if the County Attorney, Steve Groom, would request her assistance and bring her under somewhat of the same "umbrella of protection" he has afforded me, she would willingly provide her information to him.

Detective Franck also advised me that she had been documenting these unethical decisions, racial/sexist remarks and other inappropriate behavior of the Undersheriff for approximately two plus years. I am aware that Detective Franck has met with County Attorney Steve Groom and begun to share said information. We do not however share the day-to-day operation of each other's current investigation of these matters.

<u>Originating Officer C# 200501202</u>:  Deputy Fikejs / Patrol Deputy District I
Park County Sheriff's Office
1180 PCR 16 / P.O. Box 27
Fairplay, CO 80440
(719) 836-4121

Deputy Fikejs originated PCSO case number 200501202, after receiving a telephone report of Harassment to the victim, CI: 2005-08. Deputy Fikejs took the case and developed witnesses and suspects in a fairly short period of time. The primary suspect (George Porter) was issued a citation under Colorado Revised Statues for the charge of Harassment. Please see attached.

With in a twenty-four period of time, three suspects show to the witness's place of employment and begin to intimidate them. One of the suspects is (Chuck Caldwell),

*Page (3.) of (4.)*

a jail counselor and employee of the Park County Sheriff's Office. The original report had not yet been approved by a Sgt. or sent to records at this point of his investigation. When Chuck Caldwell approached each of the witnesses, he identified them by name and what they had reported. Deputy Fikejs believes that this information had been "leaked" by Chuck Caldwell's wife, Vicki Caldwell (Merritt). Vickie Caldwell has access to the Sheriff's Office computer data system and would have been able to retrieve the witness list, which had not yet been released to anyone.

Due to Deputy Fikejs following up on this case, he was advised of other corrupt activity involving the Sheriff's Office. Deputy Fikejs discretely contacted me and requested my assistance. Because of this information, I gave him a brief overview of the case for obvious "Officer Safety" issues. I did not reveal excess information or the identity of the second confidential informant. Please see attached memo generated by Deputy Fikejs.

Originating Case Officer
of Webber Park Investigation:    Greg Flint / Detective Corporal
Park County Sheriff's Office
824 (A) Castello Ave. / P.O. Box 27
Fairplay, CO  80440
(719) 836-4388
Please see attached notes and overview.

Note: There are many other honest employees of the Sheriff's Office and Park County Administration at large, who can confirm much of this information described above. The majority of them have routinely been intimidated with job loss or other harassment techniques and are fearful of reprisal for reporting any wrongdoing. I do believe that many people may come forward, if a higher authority adopts this case.

Due to the fact I am collecting this information outside the normal accepted departments reporting format, I will use this document as an informal "Supplemental Report."

Detective Corporal Gregory (S) Flint          Date: 9/22/05

*Page (4.) of (4.)*