# RICHARD REISLER
## PRIVATE INVESTIGATIONS, LLC
15776 Agate Creek Drive
Monument, CO. 80132
719-244-6200    FAX 719-488-9359
Richardpi379@hotmail.com

## CONFIDENTIAL REPORT

January 28, 2008

Dear Mr. Reed,

I have been asked to offer an opinion on the investigation conducted by Detective Corporal Gregory S. Flint, dated 9/22/05, and the firing of Deputy Chuck Caldwell, referred to as the Webber Park Investigation/Brief Synopsis.

Relative to that request, I have read the material listed below:

Park County Office of the County Attorney letter, dated March29, 2006, referred to as page 00043.

Webber Park Investigation /Brief Synopsis pages 00044 through 00055.

Park County Sheriff's Office Policy and Procedure Manual Pages 000385 through 000450.

Park County Sheriff's Office Internal Investigations Case# 2006-IA-002

Civil Action No. 07-cv-00371RPM-MEH Charles Caldwell and Vicky Caldwell

Colorado Court Database pages 000256 through 000318

Letter dated April 5, 2006, from Charles Caldwell to Sheriff Fred Wegener, pages 00056 through 00060

Memo dated 11/17/2005, from Captain Monte Gore to Vicky Caldwell, pages 000061 through 00065

Hand written correspondence date 12/7/06, pages 000066 through 000083

District Court, County of Park, State of Colorado, Case No. 2005-C 000238, pages 000084 through 000255

1

## SUMMARY

This document specifies that starting in mid September, 2003, Detective Flint was joined with Ron Zaccagnini, of the Colorado Division of Wildlife, to investigate a large scale poaching operation in the Webber Park area.

During the investigation, at least three of the suspects were producing Meth. Six or seven other suspects aided in the process of producing this Meth. These suspects were described as being extremely into "Snuff Pornography". There is information that an Indian woman, named Sophie, would "winter up" with one of the single males. This woman disappeared leading the reader of this investigation to presume that she was murdered, and her body is in a collapsed mine.

The source of this information is given as C.I.2005-05.

Detective Flint briefs his under sheriff, Anthony, on 11-03-03, and explains that a large scale poaching operation, Meth and Marijuana cultivation is occurring. At this same briefing, information is relayed that two civilians are involved. They are identified as Vicky Merritt and Chuck Caldwell. Both of them are known to Detective Flint.

Under Sheriff Anthony asked about Vicky's involvement. Detective Flint reports that she has knowledge of these events, but no involvement yet. They continue to discuss Vicky, because Under Sheriff Anthony wants to hire her as a bookkeeper.

On December 3, 2003, Ron Zaccagnini reports that there is a "leak" in the investigation and wants his map back, which details the locations of these illegal events.

Not much happens until June of 2004 when bits of information come in through an unidentified deputy. That information states that Webber Park crew has moved freezers and other equipment to the "Happy Ass Ranch". This equipment is used to manufacture Meth. The Happy Ass Ranch becomes a focus point. By the time the snow breaks, in April of 2005, Sergeant Brown and Detective Flint agree to scout the area for surveillance locations, but because of bad weather that never happens.

On June 22, 2005, a report is given to Under Sheriff Anthony. Detective Flint is ordered to re-open the "Webber Park" investigation. He is advised that this same CI (2005-05) has contacted the FBI.

Under Sheriff Anthony wants the Department of Wildlife officer Zaccagnini to join in on this investigation. Detective Flint questions why a case which has been closed for two years is being re-opened. The other unusual point is that a former suspect, Chuck Caldwell was being defended by the Under Sheriff, who made a statement that he did not think Chuck (Caldwell) did anything wrong by talking to them. ('Them' is unclear in this report).

Detective Flint also wonders why he is being asked to circumvent his chain of command.

Under Sheriff Anthony goes on to talk about a large RAVE party that is to occur at the Happy Ass Ranch. Detective Flint wonders why extra people are not put to work. 48 traffic stops of people, traveling the route to this RAVE, fail to produce any drugs.

CI 2005-05 gives information that a drug purchase took place, and the purchaser was a PCSO (Park County Sheriff's Officer).

There is talk about a leak, and that Chuck Caldwell bought Marijuana at a bait shop in Lake George.

CI 2005-05 has a tape of death threats that was received. Only two of the six threats are recovered from the cell phone of CI 2005-05.

From July 1, to September 8, 2005, numerous tapes and photographs of potential suspects are obtained by Detective Flint.

Detective Flint reports rumors to the County Attorney, Gromme, that inappropriate County money is being spent. Later the County Attorney confirmed this rumor; the Under Sheriff Anthony and Lt. Raschs are identified as the people involved.

Detective Flint related that, at lower and higher levels of the spectrum, numerous policies and laws have been broken, and numerous policy violations have occurred. He also reveals that, within seventy two hours of this report, he is aware of more incidents describing sexual harassment and the unlawful arrest of a 72 year old man.

On September 8, 2005, Deputy Fikejs talks with Detective Flint and advises him that Deputy Caldwell and George Porter had recently threatened CI 2005-05 and CI 2005-08 in person.

Detective Flint video tapes an interview with CI 2005-08. He concludes that the Park County Sheriff's Office personnel have utilized their positions to steer, impede or deliberately stall legitimate investigations.

A request is made for the assistance of an unidentified Bureau.

This document also contained a four page Witness/Victim list of the Webber Park Investigation.

**OPINION**

On page 8 of the Webber Park investigation (my page 00050), there is a notation stating that: "Due to the fact I am collecting this information outside the normal accepted department's reporting format, I will use this document as an informal Offense/Incident Report". This notation is signed by Detective Flint and dated October 4, 2005. This same notation appears on page 4 of 4 of the Witness/Victim list (my page 00055).

If this document was used to make any decisions that would affect employment status, or the arrest and filing of criminal charges, then this document is fatally flawed. I find it outrageous and certainly "outside the normal and accepted" format in conducting an investigation!

This document is filled with conjecture and paranoia.

The reader is asked to accept that the informants, CI 2005 -05 and CI 2005-08, are reliable sources of information. It is common and accepted practice to document the reliability of informants. A review of the Park County Sheriff's Office Policy Manual requires this as well, yet nowhere in this report is the credibility of the informants offered.

I specifically refer to the Park County Sheriff's Office Policy and Procedure Manual:

Policy 727 Confidential Informants Chapter VII, sub section II Definitions:

<u>CONFIDENTIAL INFORMANT FILE</u>: File maintained in order to document all information that pertains to confidential informants.

<u>UN RELIABLE CONFIDENTIAL INFORMANT FILE:</u> File containing information pertaining to individuals determined generally unfit to perform as informants.

After reading this entire file, consisting of the documents I listed on pages one and two of my report, the confidential informant identified as CI 2005-05 is Shawna Whiteowl. Ms. Whiteowl was charged with giving false information in Park County Sheriff's Office Criminal Offense report #9902130 (my page 000174) 18-8-111 and was charged under summons #16231 (my page 000176). This summons included a charge of Harassment 18-9-111.

The details of report #9902130 reflect Shawna Whiteowl as a frequent complainer who not only exaggerates but gives information that she knew was incorrect to law enforcement, as a way to annoy her neighbors. I refer to page 2 of 2 report #9902130 (my page 000174) in which Whiteowl reported that Terry Rook had damaged the public roadway but knew he was on private property. This same report related that a history of

4

complaints from Whiteowl, that were investigated, were unfounded.
This is hardly the profile of a reliable informant.

The allegation that a large scale poaching operation, Meth lab and viewing of snuff porn films is offered as fact in absence of any proof.

The reader is lead to believe, by *innuendo,* that a murder occurred ten years ago. I refer to the Indian woman (Sophie) who would "winter up" with single men. Even though the possibility that a human being may have been murdered, which is a class one felony, the highest crime on the books, there is no reference to any official investigation to determine if the crime of murder occurred. In addition, a person had been interviewed who had confirmed there was such a woman. A confidential informant indicated the site of a cave where the body would be located.

The allegations of a "large scale" poaching operation are offered without confirmation (evidence) that this occurred. There are no references to blood trails, animal remains, reports of gun fire, or interviews.

In any criminal investigation there is a format. This format includes:

- Listing the Criminal Statutes that are alleged to have been violated
- Listing the elements of the crimes that the investigation must prove
- List specific dates and times of interviews
- Make use of investigative tools such as Polygraph Exams, Search Warrants, Subpoenas
- Documentation of evidence that is collected

An investigation must answer the questions of who, what, why, where, when and how.

In the report that Mr. Caldwell bought Marijuana at a bait shop in Lake George, the reader is not given any proof. Common and accepted practice would require that a sample of the material, suspected of being Marijuana, be obtained. A "presumptive field test" is then performed which would establish probable cause to arrest an offender. In this case there was an absolute lack of probable cause to charge anyone.

For a conviction of the charge of possessing the Marijuana, it would have then been sent to a crime lab, such as CBI, for further testing. Once a report is issued confirming the substance has in fact been identified as an illegal substance (Marijuana in this case), then there is enough evidence to obtain a conviction.

None of these procedures were conducted in this report.

From the reports I have read, no sample of the suspected Marijuana was logged in as evidence.
No evidence is offered as to how the reporting person knows the substance is Marijuana.

5

From reading this document it appears to me that there is a request for help from an unidentified "Bureau".

From reading the information contained in this document, there is no offer of proof to substantiate these allegations. If I were reviewing this document, as one submitted by a detective who worked for me, I would not find it suitable to forward to the local prosecutor's office for a "Filing Review", because there is no evidence to support allegations.

I have been a sworn officer for thirty two years. I served as a Homicide Detective for eight of those years, numerous assignments as Detective Sergeant supervising the Major Crimes Unit and various task force investigative units, Special Investigator to dozens of Grand Juries, primary investigator and advisor to Internal Affairs Unit on several high profile internal inquiries. It is my opinion that the allegations of wrong doing by sworn deputies are disturbing and warranted a thorough investigation.

This report does not meet the criteria of an investigation because none of the allegations are supported by evidence. Perhaps there is such evidence, but it is not detailed in this report.

I did read investigative reports filed by the Park County Sheriff's Office that do follow common and accepted practice, such as and to include:
- #9902130
- #9900918
- #2006001912

I would conclude that the common and accepted method for conducting an investigation was known to the Park County Sheriff's deputies. It just was not followed in the Webber Park investigation.

In the letter from Sheriff Fred Wegener to Chuck Caldwell, dated 02/22/2006, (my page 000008) Chuck Caldwell is terminated effective February 10, 2006. The grounds for Termination of Employment are based upon false statements on Mr. Caldwell's application.

In a memo from Sergeant Muldoon, dated Thursday December 08, 2005, a call was made to verify that Chuck Caldwell did work for the Forest Park Police Department in Oklahoma. This call was not made to the agency Mr. Caldwell indicated he had worked for, but rather to the Oklahoma County Sheriff's Office (my page 00010).

The fact that there is a letter from the Chief of Police from Forest Park Police Department in Oklahoma is included in the documents I read, confirming that Chuck Caldwell did

work for them, along with training documents from Park County showing that Chuck was doing a good job, paint a clear picture upon which to base my opinion.

It is my opinion, after review of the stated documents, and the Webber Park Investigation that the false information on Mr. Caldwell's application for employment were merely a pretext for firing him.

Perhaps Sheriff Wegener could have Mr. Caldwell if he chose to do so.   However, to base the termination on the subject matter I reviewed is without foundation.

As I have stated before, I have been a sworn Peace Officer in the State of Colorado.  I have conducted criminal investigations on members of my place of employment (Colorado Springs Police Department) and arrested the offenders on criminal charges.  I have conducted many internal investigations making recommendations for progressive discipline, from counseling to termination of employment.

It has been my experience that in the field of Police work, someone who has been "fired" from a law enforcement agency is not readily employable in that same profession.

To make known this information seriously damages a person's ability to obtain work.


Richard Reisler

7

# RICHARD REISLER
## *PRIVATE INVESTIGATIONS, LLC*
15776 Agate Creek Drive
Monument, CO. 80132
719-244-6200   FAX 719-488-9359
*Richardpi379@hotmail.com*

Thirty Two Years of service all with CSPD

July, 15, 2006 Retired

2000-2006- CSPD *Patrol Division* Colorado Springs Police Department, Falcon Division. I supervised the Swing shift activities.
1998-2000- CSPD *Falcon Investigations* unit. I supervised the Crimes against property unit.
1998-2000-CSPD *Neighborhood Traffic Unit* Supervisor.(Concurrent with Falcon Investigations
1993-1998- CSPD *Major Crimes* unit, Sexual assaults against adults and children, Homicides against children, and the victims service unit supervisor.
1990-1993-CSPD *Falcon Investigations* unit and Theft and Auto Burglary Unit supervisor.
1987-1990- CSPD *SWAT* Team Supervisor
1987-1993-CSPD *Explosives* Unit Supervisor
1987-1990-CSPD and District Attorneys office supervisor of a *Career Criminal Unit* (TRACC)
1987-2006 -CSPD-Promoted to the rank of Sergeant
1980-1987-CSPD *Homicide* Detective
1979-1980-CSPD *Detective Property* Crimes Detective
1976-1979-CSPD Officer assigned to the *Special Anti Crime Squad* (Burglary/ Robbery crime prevention unit
1974-1976-CSPD *Patrol Officer*

| COMMENDATIONS: | SPECIAL TRAINING |
|---|---|
| Medal of Valor | Certified EOD (Dept. Defense/FBI |
| Distinguished Service Medal | Certified Arson (Nat'l Fire Academy) |
| Two Commendation Ribbons | Crime Prevention (CPTED) |
| Numerous written commendations | Dignitary Protection (Secret Service) |
| | Certified Locksmith (Foley Belsaw) |
| | Certified Instructor (Colorado Peace Officers Standards in Training) |

| DATE/PROGRAM | SPONSOR | HOURS |
|---|---|---|
| 1992/ADVANCED TERRORIST ACTIVITIES | IABTI | 9 6 |
| 1990/HAZ-MAT/AWARENESS | CSFD | 24 |
| 1990/SHOCAP/MVT CONF. | CCA ASSOC. | 40 |
| 1990/BOMB TECH FAA | DEPT. OF TRANSPORTATION | 20 16 |
| 1990/TERRORISM/BOMBS | IABTI | 40 |
| 1989/ADVANCED EXPLOSIVES | IABTI | 20 |
| 1989/HIGH RISK WARRANTS | IACP | 24 |
| 1989/IMPROVISED BOMBS | IABTI | 24 |
| 1988/RAILROAD HAZ-MAT | BURLINGTON | 16 |
| 1988/MP-5 SUB-GUNS | H&K | 40 |
| 1987/CAREER CRIMINALS | CSPD | 160 |
| 1987/VIP PROTECTION | SECRET SERVICE | 40 |
| 1987/EXPLOSIVES TECH. | FBI/DEF. DEPT. | 120 |
| 1985/INSTRUCTORS' CLASS | CLETA | 15 |
| 1983/FIRE/ARSON INVESTIGATION | NATIONAL FIRE ACADEMY | MOS. |
| 1983/LOCKSMITHING | BELSAW | 8 16 |
| 1983/BIKERS INTELL. | COBRA | 40 |
| 1982/CRIME SCENE INVESTIGATION | NAT'L. LAW ENFORCE-MENT INSTITUTE | 40 |
| 1981/HOMICIDE/SEX CRIMES | FBI | 4 |
| 1980/INVESTIGATIVE TECHNIQUES | CLETA | 40 |
| 1980/HOMICIDE SCHOOL 1979/AUTO THEFT SCHOOL 1979/CRIME AGAINST ELDERLY 1978/BODY LANGUAGE 1977/DUI SCHOOL 1977/ADVANCED LATENT PRINTS | CO/WY DETECTIVE ASSOC. CAIA NRP & TEACHERS' ASSOC. WITNESS AWARENESS CLINIC COLO. DIV. OF SAFETY | 8 16 4 40 8 40 |
| 1976/BURGLARY/ROBBERY INVEST. | FBI | 40 |
| 1974/POLICE RECRUIT ACADEMY | CBI CSPD/CLETA | 460 |

## SUPERVISORY EXPERIENCE:

May 1990 to Present: Falcon Investigations Unit * TABU Unit * Explosives Unit

As supervisor of the Falcon Investigations Unit, I maintain statistical data, screen cases and supervise five detectives covering two shifts.

I supervise the TABU Unit (see Annual Report attached) and share responsibility for the Explosives Unit with another supervisor.

January 1988 to May 1990: Tactical Unit * Explosives Unit * RAT Unit

In order to facilitate the opening of the new Area Commands, I was asked to combine supervisory responsibilities of the Explosives Unit and the Tactical Enforcement Unit (freeing one sergeant position) and dropping the TRACC Unit (which was transferred under Major Crimes). As supervisor of the Tactical Unit, I was also responsible for the RAT Unit.

I have planned and participated in over eighty SWAT deployments, the majority of which were high risk warrant services.

As Tactical Sergeant, I have responded to and made plans for deployments to abortion protests, peace marches, Presidential visits and an assortment of other special events.

**Internal Affairs Related Experience:**

1987 I was promoted to the rank of Sergeant at Colorado Springs Police Department. As such I attended "in service training" which consisted of a mandatory two week assignment in IA.

While CSPD maintains a separate Internal Affairs unit, each sergeant is expected to conduct a preliminary inquiry on any compliant received. Those investigations are then either sent to IA or returned to the Sergeant for completion.

As a Sergeant I have been assigned to investigate a large number of complaints. I have had addition tours of duty as refresher courses in I.A.

During 1992, while assigned as the Detective Sergeant to Falcon Investigations I worked all "overflow" cases sent to IA.

I have conducted several extensive internal investigations. One of those cases resulting in a recommend termination of employment for a twenty year veteran. That recommendation was accepted.

During my assignment to the Major Crimes unit as Detective Sergeant, I was asked to give technical support to IA. This resulted in a sting operation of a veteran who was suspended. I conducted a criminal investigation against that same veteran; however the statute of limitations had expired.

I conducted a criminal investigation against a sixteen year veteran and wife, also a sworn officer. This officer was arrested and criminally charged with a felony, he resigned as did his wife. The officer plead guilty, his wife was facing a misdemeanor, however the statute of limitations expired and there was no prosecution, her resignation was accepted.

I have attended numerous Ethics classes sponsored by CSPD. I have taught three classes to officers on the promotional list, to the rank of Sergeant; those classes were in Police Ethics taught at the CSPD training Academy.

I investigated two cases involving alleged misconduct by Judges from the Fourth Judicial District. One case was unfounded; the other resulted in that Judge seeking psychiatric support and a six month review.

I have been asked by my agency to take over a unit after the previous supervisor who transferred for a failure to command. I accepted that position earning several written commendations.
I incorporate Police Ethic into the courses I have taught.

# MAJOR CRIMINAL INVESTIGATIONS CONDUCTED BY
## RICHARD REISLER

| Year | Victim | Offense/Report Number | Disposition of Case |
|---|---|---|---|
| 1980 | David Allen Ringer | Homicide/89-7131 | Cleared |
| 1980 | Augustus Perreira | Homicide/80-7381 | Cleared (Police Officer Killed) |
| 1980 | Olive Groskinski | Homicide/80-11895 | Cleared |
| 1980 | Stanley Johnson | Homicide/80-12682 | Cleared |
| 1980 | John Charley | Homicide/80-15822 | Cleared |
| 1980 | William Strader | Homicide/80-1 7482 | Cleared |
| 1980 | Susan Geary | Homicide/80-22274 | Cleared |
| 1981 | Eddie Sanchez | Homicide/81-1334 | Cleared |
| 1981 | Radford Miles | Homicide/81-3443 | Opened |
| 1981 | Kevin Adams | Homicide/81-4188 | Cleared |
| 1981 | Michael Hurley | Homicide/81-6681 | Cleared (Police Officer Killed) |
| 1981 | Virginia Eatherton | Homicide/81-7471 | Cleared |
| 1981 | Charles Catalano | Homicide/81-9269 | Cleared |
| 1981 | Jimmy Shadday | Homicide/81-10901 | Cleared |
| 1981 | Teresita Olguin | Homicide/81-16104 | Cleared |
| 1981 | Michael Jeffries | Homicide/81-26130 | Cleared |
| 1982 | Curtis Litsair | Homicide/82-1555 | Cleared |
| 1982 | Iris Daily | Homicide/82-1 321 2 | Cleared |
| 1982 | Jerry Terry | Homicide/82-21 021 | Cleared |
| 1982 | Mark Dabling | Homicide/82-27538 | Cleared (Police Officer Killed) |
| 1982 | David McLaughlin | Homicide/82-28827 | Opened |
| 1983 | Cynthia McLuen | Homicide/83-3176 | Cleared |
| 1983 | Donald Emmett | Homicide/83-10725 | Cleared |
| 1983 | Keith Axelson | Homicide/83-11023 | Cleared |
| 1983 | Fernanda Jaurequi | Homicide/83-21855 | Cleared |
| 1983 | Beverly Huckleberry | Homicide/83-26499 | Cleared |
| 1984 | James Semon | Homicide/84-11745 | Cleared |
| 1984 | John Berg | Homicide/84-25913 | Cleared |
| 1985 | Cassandra Rundle | Homicide/85-4771 | Opened |
|  | Melanie Sturm | Homicide/85-4771 | Opened |
|  | Detrick Sturm | Homicide/85-4771 | Opened |
| 1985 | Raymond Archuleta | Homicide/%-23593 | Cleared |
| 1985 | John Crawford | Homicide/85-26957 | Cleared |
| 1985 | Robert Costello | Homicide/85-28822 | Cleared |
| 1986 | Peter Martinez | Homicide/86-9435 | Cleared (Justified) |
| 1986 | Joanne McNamara | Homicide/86-14221 | Cleared (Archebeque - Suspect in Mass Murder Killed Himself) |
|  | Debra Green | Homicide/86-14221 | |
|  | James Roepke | Homicide/86-14221 | |
|  | Sandra Howard | Homicide/86-14221 | |
|  | Elaine Sindledecker | Homicide/86-14221 | |

# RICHARD REISLER
## PRIVATE INVESTIGATIONS, LLC
15776 Agate Creek Drive
Monument, CO. 80132
719-244-6200   FAX 719-488-9359
Richardpi379@hotmail.com

## Trial Deposition Testimony Log

1/24/08

I have recently retired from active duty as a sworn officer on the Colorado Springs Police Department.

I have not yet had the opportunity to give testimony as an expert.

During the thirty two years I served as an Officer I have been accepted as an expert and given testimony on two cases involving the use of explosives and one case involving the recognition of burglary tools. I did not record the dates or Criminal Docket numbers of those cases which would have occurred in the 1990's.

I served as a special investigator to the El Paso County Grand Jury in about twenty cases and have testified in numerous criminal cases.


Richard Reisler