**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-000371-RPM-MEH

CHARLES CALDWELL, and
VICKI CALDWELL,

Plaintiffs,

v.

THE COUNTY OF PARK, a body corporate and politic and a political subdivision of the State of Colorado,
FRED WEGENER,
MONTE GORE,
GREGORY S. FLINT,
STEVEN GROOME,
SHAWNA WHITEOWL, and
MARK DAMON

Defendants.

## PLAINTIFFS' ANSWERS TO DEFENDANT DAMON'S FIRST SET OF INTERROGATORIES

COMES NOW the above named Plaintiffs, Charles and Vicki Caldwell, by and through their attorney of record, James A. Reed, P.C., by James A. Reed, Esq., and hereby provide their Answers to Defendant Mark Damon's First Set of Interrogatories as follows:

### GENERAL OBJECTIONS AND CONDITIONS

1. Plaintiffs object generally to any instruction which is beyond the requirements of Rules 26, 33 and 34 of the Federal Rules of Civil Procedure.

2. Plaintiffs object generally to any definition which requires information beyond the scope permitted by Rules 26, 33 and 34 of the Federal Rules of Civil Procedure.

3.   Plaintiffs object to any request for information which is privileged from discovery on the basis of the attorney/client privilege, work product doctrine or any other basis or privilege. Plaintiffs will not produce this information.

4.   Plaintiffs object to any request for admission to the extent it seeks information which is confidential or proprietary. Without waiving this objection (and providing that the confidential nature of the information sought is the only basis for objecting to a particular discovery request), Plaintiffs will provide such information under an appropriate protective order.

## RESPONSES TO WRITTEN INTERROGATORIES:

### Interrogatory No. 1:

Identify each person who participated in preparing the answers to these Interrogatories. If more than one person participated, identify the information that was provided by each person.

**ANSWER:**   **Charles and Vicki Caldwell.**

### Interrogatory No. 2:

If you contend that Defendant "willfully participated in a joint activity with the County Defendants," identify and describe any such "joint activity," identify and describe how Defendant "willfully participated" in such activity, identify the "County Defendants" with whom Defendant participated, and identify the dates and times during which such activity took place.

**ANSWER:**   **At this point, most of our information comes from the Webber Park Synopsis. We will supplement this Answer once discovery is completed.**

**Mark Damon admitted being CI-2005-05 to both of us and to Jack Swarowski at Mr. Swarowski's house during the summer of 2006. Mr. Swarowski has been previously identified in our initial disclosures. Specifically:**

2

(a) CI-2005-05 purposefully and willfully told Det. Flint that Wayne Widora had implicitly admitted to the murder of a woman named "Sophie" some time ago in the Valley. Det. Flint used this information in part to raise suspicions against Mr. Widora and people the detective felt were associated with him, including the Plaintiffs here. After this "information" was supplied by CI-2005-05 to the detective, the Park County Sheriff's Office advised Mr. Caldwell that he was being investigated for "consorting with persons of bad character." The conduct of Mr. Damon, Det. Flint, and the Park County Sheriff's Office (Mr. Wegener and Mr. Gore) in concert, ultimately cost both Plaintiffs their jobs, and resulted in defaming material being put in both Plaintiffs personnel files.

(b) CI-2005-05 is quoted by Det. Flint as making allegations that Plaintiff Charles Caldwell was actively involved in large scale poaching operations) and that Vicki Caldwell was believed by the informant to have known of these operations, and that CI-2005-05 said that the "suspects" impliedly including these Plaintiffs since Det. Flint then lists the Plaintiffs by name as "suspects" involved in the "ongoing criminal activity" in his synopsis) were also involved in meth production and marijuana cultivation.

(c) Mark Damon apparently prepared maps for the Park County Sheriff's Office setting forth what he claimed were methamphetamine production sites, marijuana cultivation sites, poaching locations, and the properties of victims of burglaries and thefts in the Webber Park Valley. This is taken from Page 3 of the Synopsis. This information was given to Det. Flint and it is believed formed the basis for the internal investigations of Don Anthony and the Plaintiffs, ultimately leading to each of their firings (or in Vicki Caldwell's situation, her constructive firing).

3

(d)     In the Synopsis at Page 4, CI-2005-05 is indicated as having contacted the FBI, apparently to get them to pursue actions against the "criminal element" in the Webber Park area.

(e)     CI-2005-05 directly accused Plaintiff Charles Caldwell of buying marijuana in front of him in 2005 (Page 5, Synopsis), in both taped and written statements to Det. Flint, who in turn used this information with the Sheriff's Office to get the Plaintiffs fired.

(f)     CI-2005-05 claimed that someone called and threatened him, using information supposedly only available to insiders at the Park County Sheriff's Office. Mark Damon knew that both of the Plaintiffs worked for the Park County Sheriff's Office at that time. The Plaintiffs had over the years told him so repeatedly. It is believed that Det. Flint provided this information to Defendant Gore who used it to make accusations against Plaintiff Vicki Caldwell in "disciplining" her, and to Amy Franck, the Internal Affairs officer who accused Charles Caldwell of releasing Sheriff's Office information in violation of Sheriff's Office regulations.

(g)     On Page 6 of the Synopsis, Det. Flint states that he has been provided "in excess of 8 hours of VHS and audio cassette tapes" from the "victims." The only victim identified in the Synopsis is CI-2005-05. The creation of 8 hours of tapes would seem to qualify as willful participation.

As to all of the above, it should be painfully clear that this behavior was willful and purposeful, not accidental, was engaged in with clear intent to harm the Plaintiffs, was done with the intent to obtain action on the part of Det. Flint and his superiors at the Park

4

County Sheriff's Office (thus engaging with the other Defendants in concerted action) resulting in damage to the Plaintiffs.

As for specific dates and times of each of these acts, those are not identified in the Synopsis, but should be available once discovery is completed.

**Interrogatory No. 3:**

In regard to the "activity" identified in your response to Interrogatory No. 2, if you contend that Defendant participated in that activity "with the intent to violate [Charles and Vicki Caldwell]'s due process rights," identify and describe the factual basis for that contention.

**ANSWER:** Mr. Damon did all of the acts discussed in Answer No. 2 above intending the Plaintiffs to lose their jobs. The Sheriff's Office took this information as true and fired the Plaintiffs based in large part upon the information Mr. Damon provided. The Webber Park Synopsis was placed in Plaintiff Charles Caldwell's personnel file without his being given any chance to refute the allegations in any way. This answer will be supplemented once discovery is concluded.

**Interrogatory No. 4:**

If you contend that Defendant has been identified as the so-called "confidential informant" referred to as such in the investigative report the subject of this action, describe how you first came to know the identity of Defendant as the so-called "confidential informant," including the identity of any individuals who may have conveyed that information to Plaintiffs.

**ANSWER:** Two ways: (a) He admitted it in the summer of 2006 directly to us; and, (b) he is referred to by the name "Mark" in the Synopsis on Page 3 (wanting his maps back) and on Page 5 (death threats on the message to Mark).

**Interrogatory No. 5:**

If you contend that Defendant told Detective Flint "a number of patently false and slanderous things about the Plaintiffs," identify the statements made by Defendant and provide the dates and times at which the statements were made.

**ANSWER:** Please refer to our Answer to Interrogatory No. 2.

**Interrogatory No. 6:**

In regard to the "statements" identified in your response to Interrogatory No. 5, if you contend that Defendant made those statements "in order to have [Detective Flint] convey these mistruths to his superiors," identify and describe the factual basis for that contention.

**ANSWER:** **It is logical to believe that the Sheriff's Office investigators have to report illegal acts alleged against Sheriff's Office employees to their supervisors.**

**Interrogatory No. 7:**

In regard to the "statements" identified in your response to Interrogatory No. 5, if you contend that Defendant made those statements "with the design of getting the Plaintiffs fired from their jobs," identify and describe the factual basis for that contention.

**ANSWER:** **It is logical to believe that any Sheriff's Office employee, against whom allegations of criminal wrongdoings are made, stands to lose his job as a result of the allegations. Mr. Damon repeatedly indicated that he personally witnessed the criminal acts being alleged. If believed, it should be clear that the Plaintiffs' discharges would logically follow.**

**Interrogatory No. 8:**

If you contend that Defendant has filed a "litany of complaints [...] all of which have proven unfounded," identify any such "complaints," the dates they were filed, the party against whom the "complaints" were filed, and the resolution (if any) to those "complaints."

**ANSWER:** Please refer to our Answer to Interrogatory No. 2. We were fired, even though no other evidence was ever produced.

**Interrogatory No. 9:**

If you contend that Defendant has "repeatedly filed fallacious criminal complaints against these Plaintiffs," identify any such complaints, Plaintiffs' response thereto (if any), the dates they were filed, and the resolution (if any) to those "complaints."

**ANSWER:** Please refer to our Answer to Interrogatory Nos. 2 and 8. We deny all wrongdoing.

**Interrogatory No. 10:**

If you contend Defendant had engaged in a "pattern of harassment," identify and describe the factual basis for that contention.

**ANSWER:** Please refer to our Answer to Interrogatory No. 2. While this allegation is perhaps more true of Defendant White Owl, Defendant Damon and Defendant White Owl repeatedly acted together in such behavior, the best evidence at this point of that being their joint involvement with Defendant Flint in the Webber Park Synopsis.

**Interrogatory No. 11:**

If you contend that Defendant "published or caused to be published" the statements contained in Plaintiffs' Exhibits 1 and 2 attached to Plaintiffs' Complaint, identify and describe the factual basis for that contention.

7

ANSWER: Please refer to our Answer to Interrogatory No. 2.

**Interrogatory No. 12:**

In regard to the "statements" identified in Interrogatory No. 11, if you contend Defendant "knew that the statements were false or made the statements with reckless disregard as to whether they were true or false," identify and describe the factual basis for that contention.

ANSWER: **We know our own behavior. We never did any of the things alleged. To say that we did, and even to say that he witnessed us doing them is clearly false. Mark Damon admitted to telling us that he told the investigator what he thought the investigator wanted to hear.**

**Interrogatory No. 13:**

If you contend that the Defendant "engaged in extreme or outrageous conduct," identify and describe the conduct, including the dates upon which such conduct occurred.

ANSWER: **Please refer to our Answers to Interrogatories Nos. 2 and 12.**

**Interrogatory No. 14:**

If you contend that Defendant "made certain facts in the private lives of the Plaintiffs public," identify and describe the facts made public, how Defendant made the facts public, including the dates upon which such conduct occurred.

ANSWER: **Please refer to our Answer to Interrogatory No. 2. All of this has been set out by Mark Damon to put us in a false light as to events mostly alleged to have occurred in the privacy of our own property.**

**Interrogatory No. 15:**

If you contend that Defendant's conduct has caused Plaintiffs damage, describe or identify, for each cause of action against the Defendant, how Plaintiffs were damaged, the date upon which such damage occurred, and provide an accounting for such damage.

**ANSWER:** The numbers for our losses are set out in our answers to Defendant Park County's written requests for discovery previously submitted. Below is an effort to explain our position more fully.

For Charles Caldwell:

**Lost Income:** I had anticipated that I was going to work until I was 70 to make my social security retirement benefit higher, but since this treatment by the Park County Sheriff's Office and the individual Defendants, I have had trouble finding work. My lost income is for 10 years x $18,600.00/year. $186,000.00

**Pain & Suffering/Emotional Distress:** This is not something anyone can put an exact number to, but I think a jury would agree that I was truly harmed (anger, anxiety, humiliation, fear, depression, etc.) as a result of how we were treated over the whole thing just because Sheriff Wegener wanted to get reelected Sheriff and he thought we should be punished for not supporting him. It's up to the jury to decide what those feelings are worth. $125,000.00.

**Damaged Reputation:** Again, what is my reputation worth? $35,000.00 reflects an estimate of the damages from people thinking less of me.

**Consortia:** Depression, anxiety, arguing more, no sex drive. This affected both of us. The number is my best estimate of what I thought the harm was worth. A jury will have to decide if this is right.

**Attorney's Fees:** This is a number my attorney has estimated. You can get this information from him.

**Fine CJRA:** This is computed from the act itself at $25.00 per day, from May 15, 2006 to today. $13,500.00

**Grand Total of Claim:** $359,500.00

9

For Vicki Caldwell:

**Lost Income:** Three years of lower income (see Answer to #2 above), including expected raises from employment by Park County. $27,900.00.

**Pain & Suffering/Emotional Distress:** This is not something anyone can put an exact number to, but I think a jury would agree that I was truly harmed (anger, anxiety, humiliation, fear, depression, etc.) as a result of how we were treated over the whole thing just because Sheriff Wegener wanted to get reelected Sheriff and he thought we should be punished for not supporting him. It's up to the jury to decide what those feelings are worth. $125,000.00.

**Damaged Reputation:** Again, what is my reputation worth? I was lucky to get my present job because I knew someone familiar with the problems in Park County. But I had to disclose the firing. $35,000.00 reflects an estimate of the damages from people thinking less of me.

**Consortia:** Depression, anxiety, arguing more, no sex drive. This affected both of us. The number is my best estimate of what I thought the harm was worth. A jury will have to decide if this is right.

**Attorney's Fees:** This is a number my attorney has estimated. You can get this information from him.

**Fine CJRA:** This is computed from the act itself at $25.00 per day, from May 15, 2006 to today. $13,500.00

**Grand Total of Claim:**     $201,400.00

**Interrogatory No. 16:**

Identify any communications you have had with third parties regarding Defendant or Defendant's alleged conduct that gave rise to the present action.

**ANSWER:**

For Chuck Caldwell:

**ANSWER:** *Objection.* This is much too broad of a request for information. Perhaps if counsel could narrow what they are seeking here, I could give a better answer. Without waiving my objection, the people listed in my F.R.C.P. Rule 26(a)(1) Initial Disclosures and the following:
- Mike Priestly, 3281 Webber Park Drive, Lake George, CO, 80827;
- Mary Anthony, (719) 686-7920;

10

- Skip Vena;
- Barb and Neal Hinkle, (719) 635-7866;
- Frank and Kay Swindle, 110 Kent Avenue, Tuscola, TX 79562 (325) 554-9896;
- Sala Caldwell, (405) 501-1866;
- Hali Caldwell, (405) 410-2739;
- Mary Staples, (405) 470-3632;
- Scott Kleinhesselink, Fire Chief, Lake George Fire Department.
- Rick Paige, Officer with Park County S/O
- Karl Geis, Houston, TX (713) 468-4879
- Jim Bueford, Ponderosa Country Store, Lake George, CO
- Nick Lowry, OKC, OK (405) 943-6246
- Dennis Lanning, @ the Molly Kathleen Mine
- Bob Rogers, (719) 748-1001
- Steve Quist, Lake George Bait Shop, (719) 748-6899
- John Dillon, Gunsmoke Excavating, Lake George, CO
- Phil Dyson, Albuquerque, NM, (505) 352-9242

**For Vicki Caldwell:**

**ANSWER:** <u>Objection.</u> This is much too broad of a request for information. Perhaps if counsel could narrow what they are seeking here, I could give a better answer. Without waiving my objection, the people listed in my F.R.C.P. Rule 26(a)(1) Initial Disclosures and the following:

- Mike Priestly, 3281 Webber Park Drive, Lake George, CO, 80827;
- Mary Anthony, (719) 686-7920;
- Skip Vena;
- Fellow employees at my work, (719) 686-7920;
- Barb and Neal Hinkle, (719) 635-7866;
- Frank and Kay Swindle, 110 Kent Avenue, Tuscola, TX 79562 (325) 554-9896;
- Sala Caldwell, (405) 501-1866;
- Hali Caldwell, (405) 410-2739;
- Pam Walker, (281) 389-3226;
- Dawn Merritt, 700 W. Magnolia, Healdton, OK 73438, (580) 221-7974;
- Mary Staples, (405) 470-3632;

## VERIFICATION

I, Charles Caldwell, hereby verify that the foregoing PLAINTIFF'S ANSWERS TO DEFENDANT DAMON'S FIRST SET OF INTERROGATORIES are true, correct and complete, to the best of my knowledge and ability.

Date: March 4, 2008.

// Charles Caldwell //
Charles Caldwell

STATE OF COLORADO )
                  ) ss.
COUNTY OF El Paso )

Subscribed and sworn to before me this 4th day of March, 2008, by Charles Caldwell.

My Commission Expires: 12/10/08

Julia L. Vendeland
Notary Public

## VERIFICATION

I, Vicki Caldwell, hereby verify that the foregoing PLAINTIFF'S ANSWERS TO DEFENDANT DAMON'S FIRST SET OF INTERROGATORIES are true, correct and complete, to the best of my knowledge and ability.

Date: March 4, 2008.

// Vicki Caldwell
Vicki Caldwell

STATE OF COLORADO )
                  ) ss.
COUNTY OF El Paso )

Subscribed and sworn to before me this 4th day of March, 2008, by Charles Caldwell.

My Commission Expires: 12/10/09

Julia L. Vendeland
Notary Public

Respectfully submitted this 4th day of March, 2008.

s/ James A. Reed
James A. Reed
James A. Reed, P.C.
320 S. Cascade Avenue
Colorado Springs, CO 80903
Tel. (719) 636-9343 / Fax (719) 633-2355
***Attorney for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 4th day of March, 2008, the foregoing document was served via U.S. Mail, first class postage prepaid, and properly addressed to:

| *Attorney for Defendants County of Park, Wegener, Gore, Flint and Groome:* | *Attorney for Defendant Whiteowl:* |
|---|---|
| Katherine M.L. Pratt, Esq. | Richard Lamphere, Esq. |
| Andrew D. Ringel, Esq. | Steven U. Mullens, P.C. |
| Hall & Evans, L.L.C. | 105 East Moreno Avenue |
| 1125 17th Street, Suite 600 | Colorado Springs, CO 80903 |
| Denver, CO 80202-2052 | lampheresum@yahoo.com |
| Prattk@hallevans.com | |
| Ringela@hallevans.com | |

*Attorney for Defendant Damon:*
Michael Obernesser, Esq.
Dennis W. Hartley, P.C.
1749 South 8th Street, Suite 5
Colorado Springs, CO 80906
mobernesser@gmail.com

s/ Julia Vendeland
Julia Vendeland
James A. Reed, P.C.
320 S. Cascade Avenue
Colorado Springs, CO 80903
Tel. (719) 636-9343 / Fax (719) 633-2355

13