1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-000381-RPM-MEH

CHARLES CALDWELL, and
VICKI CALDWELL,

Plaintiffs,

vs.

THE COUNTY OF PARK, a body corporate and politic and a
political subdivision of the State of Colorado,
FRED WEGENER, MONTE GORE,
GREGORY S. FLINT, STEVEN GROOME,
SHAWNA WHITEOWL, and MARK DAMON,

Defendants.
------------------------------------------------------------
SCHEDULING ATTORNEY:              )
JAMES A. REED, ESQ..              )
320 South Cascade Avenue          )
Colorado Springs, CO  80903       )
Telephone:  719-636-9343          )
Attorney Registration No. 23308   )
                                  )

DEPOSITION OF FREDERICK WILLIAM WEGENER, III,
March 6, 2008

APPEARANCES:

FOR THE PLAINTIFFS:
      JAMES A. REED, P.C.
      320 South Cascade Avenue
      Colorado Springs, CO  80903
      BY JAMES A. REED, ESQ..

FOR THE DEFENDANTS, COUNTY OF PARK, FRED WEGENER, MONTE GORE,
GREGORY S. FLINT and STEVEN GROOME:
      HALL & EVANS, L.L.C.
      1125 17th Street, Suite 600
      Denver, CO  80202-2052
      BY KATHERINE M. L. PRATT, ESQ.

Defendants Park County
Exhibit A-9

Page 102

1  Q  Why not?
2  A  Because of what Sergeant Muldoon did then.
3  Q  You considered this an adequate investigation?
4     MS. PRATT: Form.
5     THE WITNESS: It looks like he talked to the
6  folks down there that know whether or not Mr. Caldwell was
7  part of that department.
8     MR. REED: Would it surprise you -- Well,
9  before we deal with that, when it came time to meet with
10 Chuck Caldwell concerning this, did you tell him in advance
11 of that meeting, give him any sort of written notice as to
12 the issue concerning his having lied on the application and
13 that discipline was being considered?
14    MS. PRATT: Object to the form.
15    THE WITNESS: No, I did not.
16 Q  BY MR. REED: Why not?
17 A  I didn't -- I didn't suspend him. That was
18 done by, I think it was either Muldoon or the under sheriff
19 at that time.
20 Q  I'm not talking about the suspension. I'm
21 talking about the firing.
22 A  The firing?
23 Q  The firing.
24 A  That was a letter I gave him. I'm not sure
25 what all it outlined in it.

Page 103

1  Q  Did you, in advance, tell him what you were
2  considering firing him for? Let's start there. Did you, in
3  advance, give him --
4  A  No.
5  Q  And once you had decided to fire him and
6  brought him into your office, did you give him specific
7  detail as to what lie you considered him to have made?
8     MS. PRATT: Form.
9     THE WITNESS: It would have been mentioned in
10 the letter.
11 Q  BY MR. REED: Well, let's talk about the
12 letter. I'll hand you what's been marked as Exhibit 8
13 previously in other depositions. Would you review that,
14 please, and tell me when you're finished?
15 A  (Witness complies.) Done.
16 Q  The second paragraph of that letter is the
17 closest thing I can find in the letter as to what the reason
18 for the termination is; is that a fair statement?
19 A  Yes.
20 Q  All right. And where in that paragraph does it
21 tell Mr. Caldwell that he's being fired because he lied about
22 working for the Forest Park Police Department in the past?
23 A  When it says you were found that some
24 statements made in your application were false.
25 Q  Does it tell him what statements were false?

Page 104

1  A  No.
2  Q  The application form that you guys were using
3  in 2005, is it fair to say it was a 19-page application form?
4     MS. PRATT: For the record it's Exhibit 3.
5  Q  BY MR. REED: And I've just handed Exhibit 3 to
6  the Witness.
7  A  26 pages.
8  Q  Well, some of those pages are other things. I
9  was just focused on the application. If it's 26, fine. I
10 just want to be sure that I'm being fair with you.
11    It's your testimony that this whole entire
12 document is the application?
13 A  Correct.
14 Q  All right. With respect to the 26 pages of
15 application, did you consider this advisement in Paragraph 8
16 to be an adequate advisement of what the lie was?
17    MS. PRATT: Object to the form.
18    THE WITNESS: Yes.
19 Q  BY MR. REED: Why?
20 A  Based upon the incident, the fact that he was
21 still a probationary employee, that was probably fine.
22 Actually, it's probably too much. It should have just said
23 that your probationary period is -- you didn't finish your
24 probationary period and you're terminated.
25 Q  With respect to the probationary period, let's

Page 105

1  talk a little bit about that. Is it fair to say that an
2  internal affairs investigation into Mr. Caldwell had been
3  completed and that it was found that his activity was perhaps
4  that he hadn't used the best judgment but there was no
5  criminal involvement?
6  A  Correct.
7  Q  And I've just handed you Exhibit 7.
8  A  Correct.
9  Q  And you had this available to you when you made
10 your decision on whether to terminate him?
11 A  Yes, I did.
12 Q  When was he put on probation?
13 A  When he was hired.
14 Q  Oh, so probation is not any sort of
15 disciplinary probation?
16 A  Correct.
17 Q  How long is the probation?
18 A  One year.
19 Q  So it's your position that probationary
20 employees don't get advance notice of why they're being fired
21 or an opportunity to be heard?
22    MS. PRATT: Object to the form, foundation. If
23 you can answer without stating a legal conclusion, go ahead.
24 Q  MR. REED: I'm asking you for your
25 understanding, not a legal conclusion.