

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-000371-RPM-MEH

---

CHARLES CALDWELL, and
VICKI CALDWELL,

Plaintiffs,

vs.

THE COUNTY OF PARK, a body corporate and politic and a political subdivision of the State of Colorado,
FRED WEGENER,
MONTY GORE,
GREGORY S. FLINT, STEVEN GROOME,
SHAWNA WHITEOWL, and
MARK DAMON,

Defendants.

---

DEPOSITION OF DONALD L. ANTHONY
May 23, 2008

---

DEPOSITION OF DONALD L. ANTHONY, taken on behalf of the Defendants pursuant to Notice, at Park County Sheriff's Office, 1180 Park County Road 16, Fairplay, Colorado, on May 23, 2008, at 1:02 p.m., before Nicholas A. Francis, Registered Professional Reporter, Certified Shorthand Reporter and Notary Public within Colorado.

O'Brien Krachmer & associates, inc.

Defendants Park County
Exhibit A-12

Certified Shorthand Reporters • Registered Professional Reporters
728 South Cascade Avenue • Colorado Springs, Colorado 80903
(719) 635-0033 • Fax: (719) 635-3422 • (800) 643-3224

CALDWELL V. PARK COUNTY, ET AL . (ANTHONY)                DONALD ANTHONY

29

```
 1        A.    Yes.
 2        Q.    But -- okay.  All right.  I'm going to --
 3   I'm going to show you some documents to see if we can
 4   get some dates.  Let's just do it this way.  The last
 5   one that I have is 67; is that consistent with your --
 6              MR. REED:  I'll double-check.  That's what I
 7   have, as well.
 8              MR. RINGEL:  Terrific, thanks.
 9        Q.    (By Mr. Ringel)  Take a look at Exhibit 68.
10   This is an article from the "Fairplay Flume".  Do you
11   recall reading this article?
12        A.    Yes, sir.
13        Q.    And it indicates that you were placed on
14   paid administrative leave on October 14th of 2005; is
15   that --
16        A.    Correct.
17        Q.    -- the date that that occurred?
18        A.    The best that I can recall, yeah.
19        Q.    As far as you understood, who made the
20   decision to put you on paid administrative leave?
21        A.    Sheriff Wegener.
22        Q.    And were you told the reason?
23        A.    Sexual harassment, if I remember right.
24        Q.    Okay.  Fair enough.  Was there anything else
25   that you were accused of doing at that time that you
```

O'BRIEN, KRACHMER & ASSOCIATES, INC.

1  recall being informed of?
2      A.   No.
3      Q.   All right.  Then you participated in an
4  investigation, right?
5      A.   Correct.
6      Q.   How -- what format did your participation in
7  the investigation take?
8      A.   Approximately a month later, or more, I was
9  called in for an interview.
10     Q.   Where did that interview take place?
11     A.   Here at the sheriff's office.
12     Q.   Who conducted the interview?
13     A.   Chief Baca from Jefferson County.
14     Q.   Okay.  And his first name is Phil?
15     A.   I believe.
16     Q.   Okay.  Was there anyone else present in the
17 interview?
18     A.   I don't believe so, no.
19     Q.   All right.  After the interview, was there a
20 participation in -- what was your participation in any
21 investigation process?
22     A.   The following day, I went to the Jefferson
23 County Sheriff's Office for a polygraph test.
24     Q.   Who asked you the questions during the
25 polygraph?

CALDWELL V. PARK COUNTY, ET AL . (ANTHONY)                    DONALD ANTHONY

31

```
 1        A.    I don't remember his name.
 2        Q.    A polygrapher?
 3        A.    Yes.
 4        Q.    Or a polygrapher.  I don't know how you
 5   pronounce that word.  You know what I'm talking about?
 6        A.    Yes.
 7        Q.    Was Mr. Baca or Chief Baca present during
 8   that interview?
 9        A.    No.
10        Q.    All right.  Any other participation -- did
11   you have any other participation in the investigation?
12        A.    No.
13        Q.    Okay.  Take a look at Exhibit 69.  This is
14   an article, again, from the "Fairplay Flume".  Do you
15   remember reading this article?
16        A.    Yes, sir.
17        Q.    This indicates that your employment as
18   undersheriff was terminated on November 18th, 2005; is
19   that the right date?
20        A.    Correct.
21        Q.    Okay.  What was the reason told you for your
22   termination?
23        A.    I was told insubordination, failure to
24   follow directives.
25        Q.    What directive were you told you
```

```
 1   that related to your termination?
 2        A.    No.
 3        Q.    Take a look at Exhibit No. 71.  Can you
 4   identify that document for me?
 5        A.    It's a letter to the editor.
 6        Q.    That you wrote; is that right?
 7        A.    Yes.
 8        Q.    It was published in the "Fairplay Flume" on
 9   January 13th, 2006?
10        A.    That is correct.
11        Q.    Okay.  Why did you write this letter?
12        A.    I did write this letter.  Just thanking the
13   citizens of Park County.
14        Q.    Because you had worked for them,
15   essentially, for --
16        A.    Over 16 years.
17        Q.    Right.  Okay.  At some point in time, you
18   decided you wanted to run for sheriff; is that right?
19        A.    Yes.
20        Q.    When did you make that decision?
21        A.    Probably about the time that this letter was
22   written.
23        Q.    Okay.
24        A.    Though I didn't make that public for a
25   while.
```

CALDWELL V. PARK COUNTY, ET AL . (ANTHONY)                DONALD ANTHONY

41

1    Q.    When did you make that public?
2    A.    I -- when I went and filed, the beginning of
3    March, I believe it was.  Filed an affidavit to run.  I
4    believe that's about the time.
5    Q.    Take a look at Exhibit 72.  This is a March
6    10th, 2006, in the "Fairplay Flume".  Do you recall
7    reading that letter?
8    A.    Yes.
9    Q.    This article indicates that you filed to run
10   for Park County Sheriff against Sheriff Wegener?
11   A.    Correct.
12   Q.    And what did you do to accomplish that?
13   A.    Part of that is going to the county and
14   filing an affidavit for candidacy.
15   Q.    And you would have filed that with the Clerk
16   and Recorder's Office?
17   A.    Yes.
18   Q.    And the clerk and recorder at that time was
19   Debra Green; is that right?
20   A.    Correct.
21   Q.    And you believe that filing occurred in
22   March of '06?
23   A.    Correct.  March 1st, I believe, as I recall.
24   Q.    Is there a deadline for that?
25   A.    I think just as long as it was prior to the

```
 1  telling either of them?
 2       A.   Possibly.
 3       Q.   At the -- in March of '06, Vicki Caldwell
 4  and your wife, again, worked together; is that true?
 5       A.   In March of '06 -- I don't remember when she
 6  -- I believe she was still working for the sheriff's
 7  office.
 8       Q.   Okay.
 9       A.   I -- well, I don't remember when she left
10  the sheriff's office.  And, from there, she did go to
11  work for Teller County.
12       Q.   Okay.  Where your wife worked?
13       A.   Correct.
14       Q.   Does your wife still work there?
15       A.   Yes.
16       Q.   And, as far as you know, Vicki Caldwell
17  still works there, too?
18       A.   Yes.  She's my wife's supervisor.
19       Q.   So, I mean, do you -- okay.  Do you have any
20  basis to understand that Fred Wegener knew you were
21  going to run for sheriff prior to the filing that you
22  said that you think occurred on March 1st, 2006?
23       A.   To my knowledge and what I've heard, it was
24  a surprise to him.
25       Q.   Okay.  Do you have any understanding that
```

1   Monte Gore knew that you were going to run for sheriff
2   prior to March 1st, 2006 when you made the filing?
3        A.   Not that I'm aware of.
4        Q.   Do you have any understanding that Steve
5   Groome knew that you were going to run for sheriff
6   prior to March 1st, 2006 when you made the filing?
7        A.   No.
8        Q.   Do you have any understanding that Greg
9   Flint knew that you were going to run for sheriff prior
10  to March 1st, 2006 when you made the filing?
11       A.   No.
12       Q.   Do you have any understanding that any
13  current employee -- that any current employee at that
14  time of the Park County Sheriff's Department knew that
15  you were going to run for sheriff prior to March 1st,
16  2006?
17       A.   Not that I can recall, no.
18       Q.   The close-knit people that knew of this
19  information prior to you making a filing, I mean, can
20  you give me an estimate of how many folks?
21       A.   Basically just my family.
22       Q.   Okay.
23       A.   Because I wanted it to -- to be a surprise.
24       Q.   Okay.  Did you do anything to kind of get a
25  campaign ready prior to filing with the clerk and

CALDWELL V. PARK COUNTY, ET AL . (ANTHONY)    DONALD ANTHONY

45

```
 1   recorder's office?
 2        A.    No.  Not to speak of.
 3        Q.    Okay.  At some point, you've got to do
 4   things like open a campaign bank account, right?
 5        A.    Yes.
 6        Q.    When did that happen?
 7        A.    We did not open a specific account.
 8        Q.    Okay.
 9        A.    But everything was after March 1st, as I
10   recall.
11        Q.    At some point, you had a website for your
12   campaign, right?
13        A.    Correct.
14        Q.    And that happened after March 1st?
15        A.    Yes.
16        Q.    How long was that website active?
17        A.    Until the election.
18        Q.    Did you do that yourself?  Or did someone do
19   that for you?
20        A.    I did it with the help from my brother.
21        Q.    Okay.  He's got webmaster skills?
22        A.    Yeah.
23        Q.    I mean, I couldn't do it if my life depended
24   on it.
25        A.    I wrote the content.  He put it together.
```

O'BRIEN, KRACHMER & ASSOCIATES, INC.

CALDWELL V. PARK COUNTY, ET AL. (ANTHONY)                     DONALD ANTHONY

46

```
 1        Q.    Fair enough.  Okay.  But that was after
 2   March 1st?
 3        A.    Correct.
 4        Q.    And, in terms of yard signs, campaign
 5   literature, all that happened after March 1st, too?
 6        A.    Yes, sir.
 7        Q.    All right.  The county assembly was -- I
 8   think we said something like April 8th of 2006; is that
 9   right?
10        A.    Correct.
11        Q.    Take a look at Exhibit 73.  Can you identify
12   that document for me?
13              Let me ask a better question.  This is an
14   article that appeared in the "Fairplay Flume" on April
15   14th, 2006.  Do you recall reading that?
16        A.    I believe so.
17        Q.    The information in it indicated that you
18   received 21.6 percent of the votes at the county
19   assembly, is that accurate?
20        A.    Yes.
21        Q.    And that meant because you had received less
22   than 30 percent of the votes.  You weren't on the
23   Republican primary ballot for sheriff of Park County as
24   a result of the county assembly; is that right?
25        A.    At that point, yes.
```

1    Q.    But, in terms of testifying in -- I mean,
2  there was a trial with respect to Rasch, correct?
3    A.    Correct.
4    Q.    And you were not involved in that at all?
5    A.    Not at all.
6    Q.    And the district attorney never asked you
7  about Rasch or anything like that?
8    A.    No.
9    Q.    Did you ever talk to the district attorney
10 or anyone in the district attorney's office related to
11 anything that you did or didn't do as the undersheriff?
12   A.    Not that I recall.
13   Q.    All right. What did Vicki Caldwell do, if
14 anything, to support your candidacy for sheriff of Park
15 County?
16   A.    If I remember right, she gave a donation.
17   Q.    Is -- are those donations a matter of public
18 -- was her donation a matter of public record?
19   A.    Yes.
20   Q.    Okay. Where would that be a matter of
21 public record?
22   A.    On the state website, election website.
23   Q.    From the Colorado Secretary of State's
24 website?
25   A.    Yes.

CALDWELL V. PARK COUNTY, ET AL . (ANTHONY)                          DONALD ANTHONY

57

1   Q.   When would you have had to have reported her
2   giving you a campaign contribution?
3   A.   I don't remember the exact timelines as far
4   as when. And, without reviewing the website --
5   Q.   Okay.
6   A.   -- what the exact timelines have -- when
7   those numbers had to be in and all that stuff.
8   Q.   Let me ask you a better question: Did she
9   give you money before March 1st of '06?
10  A.   No.
11  Q.   The report that you made --
12  A.   That I -- not that I remember.
13  Q.   Okay. The report that you made would have
14  been to the Colorado Secretary of State for their
15  website would have been after March 1st of '06, right?
16  A.   Yes.
17  Q.   Did she -- did Ms. Caldwell do anything else
18  to support your candidacy for sheriff that you're aware
19  of?
20  A.   Not that I'm aware of. I mean, she might
21  have handed out some brochures and buttons. But she
22  was not an active participant.
23  Q.   But, whatever she did in terms of brochures
24  and buttons would have been after March 1st of '06?
25  A.   Yes.

O'BRIEN, KRACHMER & ASSOCIATES, INC.

CALDWELL V. PARK COUNTY, ET AL. (ANTHONY)                    DONALD ANTHONY

58

```
 1       Q.    What did Charles Caldwell do, if anything,
 2  to support your candidacy for sheriff?
 3       A.    If anything, the same.
 4       Q.    The same as we just discussed with Vicki
 5  Caldwell?
 6       A.    Correct.
 7       Q.    And that all would have occurred after March
 8  1st of '06, as far as you would know?
 9       A.    Correct.
10             MR. RINGEL:  All right.  Jim, I was going to
11  show him some documents in this exhibit book.  Can you
12  show him your copy and kind of read off it, so I can
13  read it at the same time?
14             MR. REED:  Sure.
15             MR. RINGEL:  It's going to be the 46s, as
16  you might guess.  Thanks.
17       Q.    (By Mr. Ringel)  Okay.  Take a look at
18  Exhibit 46.  Have you ever seen that document before?
19       A.    Yes, sir.
20       Q.    Okay.  When is the first time that you saw
21  it?
22       A.    If I remember right, approximately one week,
23  just prior to the general assembly.
24       Q.    Okay.  The county assembly?
25       A.    Yes.
```