IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-00371-RPM-MEH

CHARLES CALDWELL, and
VICKI CALDWELL,                    Plaintiffs,

v.

FRED WEGENER,
MONTE GORE,
GREGORY S. FLINT,
STEVEN GROOME,
SHAWNA WHITEOWL, and
MARK DAMON,                        Defendants.

## PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS DAMON AND WHITEOWL

Plaintiffs respond to Defendant Mark Damon and Shawna Whiteowl's Motion For Summary Judgment as follows:[1]

### INTRODUCTION

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c). "The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Filed contemporaneously with this Response is Plaintiffs' Response to Park County Defendants' Motion for Summary Judgment. Plaintiffs incorporate all of that pleading into this Response, as though set forth in full, in support of Plaintiff's position that there are genuine issues of material fact against Defendants Damon and Whiteowl. The facts stated there serve as Plaintiffs' Statement of Facts here.

Plaintiffs ground their claims against Defendants Damon and Whiteowl (whom we will refer to as the "Informant Defendants") on their actions made in concert with and to abet the Park County Defendants' actions under color of State law. Plaintiffs allege that these Informant Defendants acted with intent to violate Plaintiffs' constitutional and common law rights, and were so intertwined with law enforcement (Park County Defendants) in this matter as to render them indistinguishable for purposes of State action under §1983.

The Informant Defendants essentially argue in their Motion For Summary Judgment that simply supplying information to the police, the Park County Defendants, cannot be the basis for a claim under 42 U.S.C. Section 1983 without further proof that there was an agreement (a conspiracy) to violate Plaintiffs' constitutional rights as set forth in the Complaint.[2] The cases these Defendants cite in their brief are distinguishable from the factual circumstances of our case.

## ARGUMENT

In the cases generally being cited by the Defendants, a private individual simply saw or knew something about a criminal wrongdoing and reported it to the police. From there, a decision was made by a police officer and/or prosecutor to take action, whether that be an arrest or prosecution. In the cases cited by these Defendants, if the criminal case ultimately fell through, at least the State had truly made an effort to properly screen the information being given, and the persons providing that information had reason to believe they would do so. See, *Grow v. Fisher*, 523 F.2d 875 (7th Cir. 1975); and *Holdeman v. Consolidated Rail Corp.*, 649 F. Supp. 1188 (N.D. Ind. 1986), for example. The *Holdeman* court discusses in detail and relies upon the fact that there was no suggestion of a customary plan, scheme or

---

[2] As to Plaintiffs' State tort claims for defamation, intentional infliction of emotional distress and invasion of privacy, Defendants do not argue for summary judgment. These claims are viable claims against these private

2

agreement between the police and the private citizens and that they did not even know each other, prior to the evening of the incident involved there.

While it is true, as a general matter, that the historic purpose of 42 U.S.C. §1983 was to prevent state officials from using the cloak of their authority under state law to violate rights protected by the Fourteenth Amendment, see, *Monroe v. Pape,* 365 U.S. 167, 172 (1961), suits against private parties under §1983 can be grounded on wrongful conduct that can be fairly attributed to the State. The United States Supreme Court has long held that private citizens are amenable to suit under Section 1983 when "jointly engaged" with state officials in the violation of constitutional rights. See, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). In *Adickes*, the Court held that if the plaintiff could show "the existence of a state enforced custom of segregating the races ..." and that the private action complained of "was motivated by that state-enforced custom, she will have made out a claim under § 1983." *Id.* at 171-73. If the State is responsible for a private citizen behaving in a certain way, the private action may be deemed "state action." *Lugar v. Edmondson Oil Company, Inc.,* 457 U.S. 922 (1982).

In the case, *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, (2001), the Supreme Court discussed the conspiracy/ "in concert" concept as it applied to §1983 and private citizens, at 120 - 121:

> Our cases try to plot a line between state action subject to Fourteenth Amendment scrutiny and private conduct. . .that is not. [*National Collegiate Athletic Assn. v. Tarkanian,* 488 U.S. 179, at 193 (1988)]; *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349 . . .(1974). The judicial obligation is not only to "preserv[e] an area of individual freedom by limiting the reach of federal law and avoi[d] the imposition of responsibility on a State for conduct it could not control," *Tarkanian,supra,* at 191, 109 S.Ct. 454 (quoting *Lugar, supra,* at 936-937. . .), but also to assure that constitutional standards are invoked "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains," [*Blum v. Yaretsky,* 457 U.S. 991, at 1004

---

actors, either having arisen from their individual actions or in concert with the actions and omissions of the Park County Defendants.

3

(1982)], (emphasis in original). If the Fourteenth Amendment is not to be displaced, therefore, its ambit cannot be a simple line between States and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a State had caused it to be performed. **Thus, we say that state action may be found if, though only if, there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself."** *Jackson, supra,* at 351, 95 S.Ct. 449.FN2
FN2. If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for §1983 purposes. *Lugar v. Edmondson Oil, supra.*

\* \* \*

We have, for example, held that a challenged activity may be state action . . . when the State provides "significant encouragement, either overt or covert," *Blum,* at 1004 . . . or when a private actor operates as a "willful participant in joint activity with the State or its agents,"*Lugar, supra,* at 941, 102 S.Ct. 2744. . . .

[Boldface added to original].

In our case, Defendants Damon and Whiteowl were used as confidential informants by Defendant Flint as an ongoing and primary source of information, over a span of several years, without any supervision or apparent concern for their credibility or reliability. Exhibits 3 through 8 make it clear that this investigation lasted from 2003 to 2006. Exhibit 9, the expert opinion by Mr. Reisler, directly criticizes the total lack of follow-up investigation to either support or refute the claims being made by the informant defendants. Indeed, Defendant Flint gave these known gossip mongers (Exhs. 34 and 35) so much credence that they quickly began to see themselves as part of an undercover law enforcement unit that was investigating criminal activity on a level only seen on TV or in high-intrigue detective novels (fiction, of course). As part of that, Mr. Damon bought a $300.00 digital binocular camera so that he could take long distance photos of all of the lots in the valley, at Detective Flint's request (Damon Deposition, p 91 ℓℓ2-18); and both Damon and Whiteowl were provided communications equipment at County expense to stay in touch with authorities. Flint Deposition, p 238 ℓ13 to p 259 ℓ14. The information provided by

4

the Informant Defendants ranged from allegations about a complex criminal enterprise involving the manufacture and distribution of methamphetamine, poaching, bestiality, snuff pornography, murder, animal abuse, official corruption, espionage-like "insider" leaks, and obstruction of justice, virtually all of which was directed at the Plaintiffs as key players and nearly all of it derived from "information" orchestrated by Defendants Damon and Whiteowl. See, Exhs. 3-8. It seems evident that these defendants knowingly participated in an ongoing concerted effort with Mr. Flint, who encouraged them to raise damaging information about people in Webber Park, including these Plaintiffs, at a time they knew the Caldwells were Sheriff's Office employees. Whiteowl depo p81 ℓℓ4 to 16; Flint depo. p57 ℓ20 through p71 ℓ8; and Flint depo p87 ℓ11 through p95 ℓ14. The Flint cites clearly show the undercover nature of Mr. Damon's activities at Flint's behest.

Little or no independent police work was done to corroborate the information from by these confidential informants. Officer Flint ignored protocol and standard operating procedures for the use and reliability determination of these so-called informants. Park County Sheriff's Office Policy and Procedures Manual, Policy 727 (attached as Exhibit 36); and Exh. 9. Significantly, the contract contained in Exh. 36 was never used.

It had been well known for quite some time in the local area that Defendants Damon and Whiteowl were sources of groundless and petty complaints about others in the Webber Park area and that they had obvious credibility issues, including questionable emotional stability. It came to pass as time went on, that when they had complained to police authorities over the years, these defendants had simply been ignored, because the police themselves seemed to have come to believe they were not very reliable. Exhibits 34 and 35; and Whiteowl depo p 69 ℓℓ5 to 12. That

Mr. Flint obviously and repeatedly failed to screen even the most outrageous of their claims had to have been readily apparent to these defendants, since it so varied from what they had come to expect from the police.  Mr. Flint never challenged them on even the wildest of the allegations (murder). He never developed any "hard evidence" to support any of what they were telling him. See, Flint Deposition, p 46 ℓ23 to p 47 ℓ11, and p 110 ℓ 24 to p 111 ℓ4 (poaching); p 135 ℓℓ10-20 (marijuana); p 206 ℓ10 to p 208 ℓ1 (methamphetamine manufacture); p 208 ℓ2 to p 210 ℓ14 (murder).

Defendants Damon and Whiteowl became willing participants with law enforcement as the primary source of the information that culminated in the Webber Park Synopsis; this report was a vehicle for placing the Caldwells and Don Anthony in a bad light and to raise questions about their character and law-abiding reputation.  The very nature of the report and its fiction-novel like narrative demonstrates that it should never have led to legitimate law enforcement and crime-seeking results.  All Defendants, including informants Damon and Whiteowl, had to have understood its defamatory effects throughout the investigation.  And it is inconceivable that Mr. Damon and Ms. Whiteowl could fail to realize that the information being sought against the Caldwells, whom both Whiteowl and Damon knew were employees of the Park County Sheriff's Office, was being sought by Mr. Flint in order to affect their employment.

It is in this context that these Informant Defendants kept providing defamatory innuendo, while maintaining it as legitimate law enforcement and personnel information, for its ultimate public dissemination in violation of Plaintiffs' constitutional and common law rights.

It is true that other reasons or excuses were seized upon by the Park County Defendants to rid the Sheriffs' Office of the Caldwells and Dan Anthony.  The bullying and creation of the

hostile work environment for Vicki Caldwell over petty and unfounded suspicions of wrongdoing (suspicions first raised by the Webber Park Synopsis), and the after-the-fact pretext investigation of Charles Caldwell that wrongfully concluded he lied on his employment application, does not exonerate these private Defendants from their key participation and contribution to the existence and ultimate dissemination of the Webber Park Synopsis and its wholly unfounded and defamatory "facts" about and relating to the Caldwells. Particularly, it is the release of the Webber Park Synopsis to so many in law enforcement, and ultimately to the public, that caused a large part of these Plaintiffs' liberty interest damages. See, Exh. 9, p. 7.

In this case, the law enforcement officers from the Park County Sheriffs' Office, in particular Deputy Flint and his supervisors, Undersheriff Gore and Sheriff Wegener, failed to abide by their own procedures manual and law enforcement protocol with respect to the use, assessment, monitoring and corroboration of informants and informant information. Little or no information supplied by Defendants Damon and Whiteowl was corroborated with independent police investigation or information gathering. These informants were not registered and no Informant File was maintained on their background, credibility motivation assessment, nor were they required to sign or submit to an agreement and understanding with respect to their roles and restrictions, including an agreement or acknowledgment that they are accountable for the validity of the information they convey and they are not law enforcement officers or act under the authority of the Park County Sheriffs' Office. These are all accepted procedural protocols for the use and control of informants as a general matter in law enforcement and were required by the Park County Sheriffs' Office Policy and Procedures Manual. See, IACP National Law

Enforcement Policy Center, *Confidential Informants and Information: Model Policy* (Alexandria, Va.: International Association of Chief of Police, 2003); See, Exh. 36.

Defendants Damon and Whiteowl gathered information and reported activity as if they were undercover law enforcement agents. They never disclosed their real motivations for coming forth with the rather outlandish information they provided to the Sheriff's Office, motivations that were highly susceptible to personal vindictiveness, paranoia, and intrigue, at a time when they certainly knew of the way this material would probably be used. The information they provided was taken as truth and included in Deputy Flint's report as conclusions.

Indeed, the information from the Informant Defendants was received, reported, filed, and used as if received from trained and responsible police officers. As such, the Informant Defendants acted in concert with the Park County Sheriffs' Office as effective co-authors of the investigatory report with no regard for, or purposely intended injurious regard for, the consequences to the Plaintiffs and their constitutional rights (both the Informant Defendants and Park County Defendants should have reasonably known that, at the least, their disregard for the validity of the information could lead to the wrongful arrest and/or discharge from employment of the Plaintiffs).[3]

A reasonable person in the place and situation of the individual Defendants, including Defendants Damon and Whiteowl, would know that supplying false and outlandish information of serious criminal wrongdoing about others to law enforcement in an official investigation would cause injury and damage to those others. Only malicious and wanton intentions, at least

---

[3] As well as their use to damage the Plaintiffs' common law rights to be free from defamatory publications, to be free from intentional infliction of severe emotional distress, and their rights of privacy in being free from being placed in a false public light.

total disregard for the consequences, can account for the joint and concerted actions and omissions of all Defendants in this case. Indeed, the private and State actors in this case "invoked the aid of each other" to compile injurious information about and against the Plaintiffs for improper reasons that can be inferred from and by the surrounding circumstances, that being to compromise the Plaintiffs in their employment, reputation and alliances. See, generally, *Lugar v. Edmondson Oil Company, Inc., supra,* 457 U.S. at 923.

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *National Enters, Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). Ultimately, the court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that a party must prevail as a matter of law." *Terry Bair Sales Agency, Inc. v. All-lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996).

In our case, Plaintiffs were the victims of violations of their clearly established rights as outlined in detail in their contemporaneously filed Response to Park County Defendants' Motion For Summary Judgment. A series of jointly committed intentional acts and omissions were used to chill Plaintiffs' First Amendment rights, as well as compromise the Plaintiffs in their employment, reputation and privacy. These Informant Defendants should not now be heard to claim that all of the wrongful behavior somehow must be left at the door of the police officials. Damon and Whiteowl engaged in purposefully malicious behavior aimed at the dissemination of false information about serious criminal activity of the Plaintiffs. Without their willing and concerted action with the Sheriff's Office Defendants here, the loss of rights suffered by the Caldwells could never have happened.

## CONCLUSION

The underlying concerted action here is evident, given the circumstantial and corroborating evidence in the form of the nature, timing and extent of the series of these Defendants' acts and omissions. The surrounding circumstances in which they occurred establish clear inferential proof of the jointly held improper intentions and motives set forth in the *Lugar* case, supra.

Simply put, there clearly exists genuine issues of material fact, and Plaintiffs' claims should be submitted to a jury accordingly. Summary Judgment should be denied on all claims submitted in the Complaint filed herein.

Respectfully submitted this 28th day of July, 2008

                                           *s/ James A. Reed*
                                           James A. Reed
                                           James A. Reed, P.C.
                                           320 S. Cascade Avenue
                                           Colorado Springs, CO  80903
                                           Tel. (719) 636-9343 / Fax (719) 633-2355
                                           *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 28th day of July, 2008, the foregoing document was served via PACER/ECM to:

| | |
|---|---|
| *Attorney for Defendants County of Park, Wegener, Gore, Flint and Groome:* <br> Katherine M.L. Pratt, Esq. <br> Andrew D. Ringel, Esq. <br> Hall & Evans, L.L.C. <br> 1125 17th Street, Suite 600 <br> Denver, CO  80202-2052 <br> Prattk@hallevans.com <br> Ringela@hallevans.com | *Attorney for Defendant Whiteowl:* <br> Richard Lamphere, Esq. <br> Steven U. Mullens, P.C. <br> 105 East Moreno Avenue <br> Colorado Springs, CO  80903 <br> lampheresum@yahoo.com |
| *Attorney for Defendant Damon:* <br> Michael Obernesser, Esq. <br> Dennis W. Hartley, P.C. <br> 1749 South 8th Street, Suite 5 <br> Colorado Springs, CO  80906 <br> mobernesser@gmail.com | |

                                                s/ Julia Vendeland
                                                Julia Vendeland
                                                James A. Reed, P.C.
                                                320 S. Cascade Avenue
                                                Colorado Springs, CO  80903
                                                Tel. (719) 636-9343 / Fax (719) 633-2355