IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00371-RPM-MEH

CHARLES CALDWELL, and
VICKI CALDWELL,

      Plaintiffs,

v.

FRED WEGENER,
MONTE GORE,
GREGORY S. FLINT,
STEVEN GROOME,
SHAWNA WHITEOWL, and
MARK DAMON,

      Defendants.

_____

**PARK COUNTY DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**
_____

      Defendants, Fred Wegener, Monte Gore, and Gregory S. Flint (the "Park County Defendants"), by and through their attorneys, Andrew D. Ringel, Esq. and Katherine M.L. Pratt, Esq., of Hall & Evans, L.L.C., pursuant to Fed. R. Civ. P. 56, hereby respectfully submit this Reply in Support of Motion for Summary Judgment, and as grounds therefore state as follows:

## INTRODUCTION

      Despite submitting 42 pages of briefing and 36 exhibits, Plaintiffs present no admissible evidence to create a genuine issue of material fact.  Sheer volume does not create an issue of fact. *See, e.g., **Tonkovich v. Kansas Bd. of Regents**,* 159 F.3d 504, 534 (10th Cir. 1998) ("[F]acts by the truckload are simply not enough to meet a plaintiff's burden…").   Judgment as a matter of

law is appropriate.  Plaintiffs submit only their own self-serving testimony and the equally self-serving affidavit of Don Anthony in an effort to create their failed genuine issue of material fact. Such assertions, conclusions, and speculation are insufficient.  No corroborating evidence of any kind is provided.

Plaintiffs believe that they were the targets of a politically motivated "witch hunt" aimed at discrediting Mr. Anthony in his run for Sheriff.  [*See* Response, p. 18, ¶ 20].  While Plaintiffs may subscribe to such a titillating theory, more akin to a daytime soap opera than reality, such a notion is simply not borne out by the undisputed evidence in this case.  Such musings, even if Plaintiffs had provided any evidence to support them, would elevate both of the Plaintiffs' importance well beyond their respective roles as business manager and part-time jail case-worker at the Park County Sheriff's Office.  Neither Plaintiff had any policy-making responsibilities or served in any high-ranking role within Park County.  Simply put, there is no evidence to support Plaintiffs' unfounded suppositions.

Defendants' Motion for Summary Judgment should be granted because Plaintiffs present no evidence to create a genuine issue of material fact that any of the remaining Park County Defendants, Defendant Groome and Park County itself having been voluntarily dismissed with prejudice, discharged Plaintiffs in retaliation for their exercise of their First Amendment rights, deprived Plaintiffs of their liberty interests without due process of law, defamed Plaintiffs, intentionally inflicted emotional distress on Plaintiffs, invaded Plaintiffs' privacy, or failed to pay wages allegedly owed to the Plaintiffs.

## CONCLUSORY, SPECULATIVE AND UNSUPPORTED ASSERTIONS DO NOT CREATE A GENUINE ISSUE OF MATERIAL FACT

To meet their burden, Plaintiffs must set forth specific facts showing a genuine issue of material fact necessitating a trial.  *See* Fed. R. Civ. P. 56(e)(2); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 324 (1986); ***Anderson v. Liberty Lobby***, 477 U.S. 242, 249-51 (1986).  The evidence must be admissible at trial.  ***Pastran v. K-Mart Corp.***, 210 F.3d 1201, 1203 n. 1 (10th Cir. 2000); ***Wright-Simmons v. The City of Oklahoma City***, 155 F.3d 1264, 1268 (10th Cir. 1998). Conclusory assertions do not establish an issue of fact under Rule 56.  ***Bruner v. Baker***, 506 F.3d 1021, 1025 (10th Cir. 2007); *see also*, ***Lantec, Inc. v. Novell, Inc.***, 306 F.3d 1003, 1019 (10th Cir. 2002); ***Wausaw Bus. Ins. Co. v. U.S. Motels Mgmt.***, 341 F. Supp. 2d 1180, 1183 (D. Colo. 2004) (citing ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 528 U.S. 933 (1999)); ***Nutting v. RAM Southwest, Inc.***, 106 F. Supp. 2d 1121, 1123 (D. Colo. 2000).

Virtually all of Plaintiffs' purported evidence rests solely on Plaintiffs' own subjective and conclusory beliefs grounded in supposition, conjecture, innuendo, speculation, and illogical inference rather than any factual knowledge.  They also rely on the similarly conclusory and speculative affidavit of Don Anthony, but offer no corroborating evidence of any kind.  This is not enough.  Notably absent from Plaintiffs' submissions is any evidence from either the Republican Party delegate or *The Flume* reporter they assert received the Webber Park/Brief Synopsis other than inadmissible hearsay.  ***Starr v. Pearle Vision***, 54 F.3d 1548, 1555 (10th Cir. 1995).  Because Plaintiffs never offer evidence sufficient to create a genuine issue of material fact, Defendants' Motion for Summary must be granted.

## REPLY TO STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs' response to Defendants' Statement of Undisputed Material Facts fails to create a genuine issue of material fact necessitating a trial. A quick review of Plaintiffs' response demonstrates the "facts" they cite are nothing more than self-serving, immaterial, conclusory, and wholly speculative assertions; they are not facts. The thrust of Plaintiffs' argument rests on the insufficient notion that the Defendants "must have been involved" in disseminating the Webber Park/Brief Synopsis in the Park County community. But the absence of evidence is not proof, quite the contrary. Notably absent is any *evidence* supporting Plaintiffs' entirely self-serving conclusions about Defendants' purported actions. Rather than unnecessarily prolonging this Reply, Defendants address Plaintiffs' factual assertions in their argument, as needed.

## ARGUMENT

Defendants Fred Wegener, Monte Gore, and Gregory S. Flint are entitled to summary judgment on the Plaintiff's 42 U.S.C. § 1983 and claims under Colorado law because Plaintiffs submitted no admissible evidence to support any of their claims. Plaintiffs simply cannot establish the essential elements of any of their claims with admissible evidence as a matter of law.

## I.  THE PARK COUNTY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM THE PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AGAINST THEM

The Park County Defendants are entitled to qualified immunity from the Plaintiff's 42 U.S.C. § 1983 claims because the Plaintiffs present no admissible evidence creating a genuine issue of material fact in this regard. They fail to meet their heavy two-party burden showing: (1) the defendant's conduct violated the law; and (2) the law was clearly established when the alleged violation occurred. ***Pueblo Neighborhood Health Centers, Inc. v. Losavio***, 847 F.2d

642, 646 (10th Cir. 1988).  ***Mick v. Brewer***, 76 F.3d 1127, 1134 (10th Cir. 1996); ***Albright v. Rodriguez***, 51 F.3d 1531, 1534 (10th Cir. 1995).  Summary judgment is, therefore, appropriate.

**A.     PLAINTIFFS SUBMIT NO EVIDENCE CREATING A GENUINE ISSUE OF MATERIAL FACT THAT THE PARK COUNTY DEFENDANTS RETALIATED AGAINST THEM IN VIOLATION OF THEIR FIRST AMENDMENT RIGHTS.**

Plaintiffs produced no evidence to support the notion that the Park County Defendants terminated Charles Caldwell or constructively discharged Vicki Caldwell in retaliation for either Plaintiff's alleged exercise of their First Amendment rights.  To prevail on their First Amendment retaliation claim, Plaintiffs must show: (1) the speech at issue was constitutionally protected; and (2) that Plaintiffs' speech was a substantial or motivating factor in Plaintiffs' termination.  ***Board of County Comm'rs v. Umbehr***, 518 U.S. 668, 675 (1996).  Plaintiffs assert they supported Don Anthony, the former Undersheriff for Park County, as a candidate for the Republican nomination for the Office of Sheriff of Park County in opposition to Sheriff Fred Wegener and were terminated (or constructively discharged) in retaliation for supporting Mr. Anthony as a political candidate.

Plaintiffs fail to produce any evidence beyond their own speculation that any such speech, if they could show they engaged in anything approximating political speech, was a substantial or motivating factor in Plaintiffs' termination or alleged constructive discharge.  Plaintiffs produced no evidence that any of the Park County Defendants possessed any knowledge of either Mr. Anthony's candidacy for Sheriff beyond the most general assertion that it was "common knowledge" that he would eventually run for Sheriff at some unspecified future date or that the Plaintiffs would support Mr. Anthony before any of the Park County Defendants took any

actions respecting the Plaintiffs' employment with the Park County Sheriff's Office.[1]   Absent any evidence establishing a causal connection between the Plaintiffs' political activities and the adverse employment action, Plaintiffs' First Amendment retaliation theory fails as a matter of law.

Plaintiffs argue it was common knowledge while they were both employed by Park County that Mr. Anthony would eventually run for Sheriff and argue the Defendants retaliated against them for supporting Mr. Anthony's candidacy.  In light of Mr. Anthony's assertion that Sheriff Wegener stated that he would publicly support Mr. Anthony's candidacy after Sheriff Wegener could no longer run for re-election [*see* Plaintiffs' Exh. 14, ¶ 4], such an argument makes no sense.  If Sheriff Wegener supported Mr. Anthony for Sheriff, there was no rational basis upon which to retaliate against the Plaintiffs because they were political allies, not enemies.

Presumably, Plaintiffs mean that Sheriff Wegener felt threatened by Mr. Anthony's candidacy after Mr. Anthony decided to advance his timeframe for running for Sheriff after Mr. Anthony's termination.  Plaintiffs provide no actual evidence supporting this notion.  Rather, Plaintiffs conflate the generalized knowledge they claim the Defendants had about Mr. Anthony's intent to "someday" run for Sheriff with the notion that they must have known Mr. Anthony would run in the Fall of 2006 before Mr. Anthony made his time-table for election known to anyone.  [¶¶ 26-32].[2]

---

[1] For example, Plaintiffs reply on the coffees held by Mr. Anthony in Lake George allegedly attended by Sheriff's Office personnel.   [*See* Response, p. 24].   However, no evidence exists that any of the Defendants attended such a coffee or that anyone who did discussed Mr. Anthony's plans with the Defendants.

[2] For ease of reference, whenever possible, citations to factual references are made to the paragraph numbers contained in the Defendants' Statement of Undisputed Material Facts as set forth in their opening brief.

Even assuming the Defendants had the general knowledge about Mr. Anthony's future plans to run for Sheriff that the Plaintiffs ascribe to them (without providing any actual evidence of any such knowledge), notably absent from Plaintiffs' response is any evidence supporting the notion that Plaintiffs actually *did* or *said* anything while employed by the Park County Sheriff's Office that could have lead any of the Defendants to believe they supported Mr. Anthony for Sheriff.   Mere friendship with Mr. Anthony and his wife is not enough.   Mr. Caldwell's termination and Ms. Caldwell's resignation from her position both occurred several months *before* Mr. Anthony actually declared his candidacy for Sheriff of Park County.  As a result, it is simply not possible for any of the Park County Defendants to have engaged in political retaliation against the Plaintiffs based on their *future* support of Mr. Anthony's political campaign.  Mr. Caldwell was placed on paid administrative leave on October 14, 2005, and his employment was terminated on February 10, 2006.  [¶¶ 2, 9 & 25].  In turn, Ms. Caldwell was suspended from her employment on November 17, 2005, received a written reprimand on November 22, 2005, and resigned her employment on December 1, 2005, effective December 15, 2005.  [¶¶ 10-24].

Mr. Anthony testified he did not decide to run for Sheriff until January 2006.   [¶ 25].  Plaintiffs cannot rely on Mr. Anthony's belated contention that he always intended to run for Sheriff and everyone knew it [*see* Plaintiffs' Exh. 14, ¶¶ 3-4] to create a genuine issue of material fact.  *See, e.g., Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1198-1200 (10th Cir. 2006) (upholding district court's decision to disregard sham affidavit presented for purposes of creating a sham issue of fact).  The Plaintiffs' affidavits, like Mr. Anthony's affidavit, are artfully worded to avoid directly contradicting Mr. Anthony's previous

testimony that he did not decide to run for Sheriff until January 2006 and had no understanding that any Park County Sheriff's Office employee had any idea he had decided to run for Sheriff until he filed his affidavit on March 1, 2006.  [Compare Plaintiffs' Exh., 34, ¶¶ 6-7, Plaintiffs' Exh. 35, ¶¶ 6-7 with Defendants' Statement of Undisputed Material Facts at ¶¶ 26-32].  Plaintiffs' subjective beliefs are insufficient to create an issue of material fact.  Also, no evidence has been presented by the Plaintiffs to support any conclusion any of the individual Defendants knew Mr. Anthony planned to run for Sheriff in the Fall of 2005, knew the Plaintiffs supported Mr. Anthony's prospective candidacy in the Fall of 2005, and took adverse action against the Plaintiffs based on this type of actual, specific knowledge.

Mr. Anthony clearly testified that he did not publicize his decision to run for Sheriff until March 2006 and that the Plaintiffs did nothing to publicly support him until that time.  [¶¶ 25-31].  By March of 2006 neither of the Plaintiffs were employed by the PCSO, and any adverse action taken with respect to their employment had occurred previously.  Thus, there is not and cannot be any causal connection between any First Amendment activity engaged in by the Plaintiffs and any allegedly retaliatory action taken by any of the Park County Defendants.

Moreover, Plaintiffs present no evidence any of the Park County Defendants were actually aware of their engaging in any First Amendment protected activity.  Plaintiffs have provided no evidence, conclusory or otherwise, to suggest that any of the Defendants were aware the Plaintiffs were political supporters of Mr. Anthony.  At best, Plaintiffs speculate that because they were friends with Mr. Anthony the Park County Defendants must have known that they would support him politically.  But even the Plaintiffs admit that being someone's friend differs from being an individual's political supporter.  [¶¶ 35, 39].  Plaintiffs simply lack any actual

evidence that any of the Park County Defendants had any knowledge that the Plaintiffs politically supported Mr. Anthony in his race for Sheriff.  [¶¶ 33-39].

Plaintiffs' citation to **Elrod v. Burns**, 427 U.S. 347 (1976), is inapposite.  In **Elrod** the Supreme Court disapproved of the practice of patronage, whereby an outgoing political party's employees were replaced with employees from the incoming party.  Such a notion has no bearing on the undisputed facts of this case.  First, Don Anthony was never elected.  Second, Plaintiffs present no evidence that any employment action taken by any of the Defendants was politically motivated.  Third, Mr. Anthony and Sheriff Wegener are members of the same political party – the Republican Party.  Thus, Plaintiffs' reliance on **Elrod** is misplaced.

Plaintiffs next argue that people intent on violating another person's constitutional rights generally do not announce their plans.  This post hoc attempt to make up for Plaintiffs' lack of any evidence by arguing that a jury should be permitted to review Plaintiffs' speculative and conjectural hypotheses must be rejected by the Court.  Such a notion flies in the face of the purpose of Fed. R. Civ. P. 56, which provides a mechanism to preserve judicial and litigant resources when there are no genuine issues of material fact necessitating a trial.  Plaintiffs' "gut feelings," speculation and assumptions are insufficient to state any viable claim as a matter of law.  While Plaintiffs may rely on circumstantial evidence to prove the Park County Defendants' knowledge, Plaintiffs have presented absolutely no evidence, circumstantial or otherwise, to establish any of the Park County Defendants had actual knowledge of their political support of Mr. Anthony.  Fundamentally, the absence of any actual evidence any of the Park County Defendants knew of Plaintiffs' political activities undercuts any conclusion they took action to retaliate against the Plaintiffs in violation of their First Amendment rights as a matter of law.

**B.**     **PLAINTIFFS' DUE PROCESS CLAIMS AGAINST THE PARK COUNTY DEFENDANTS FAIL AS A MATTER OF LAW.**

Plaintiffs argue their due process rights were violated.  Plaintiffs appear to confuse the standards for a First Amendment retaliation claim with the standards for a due process claim. [*See* Response, p. 31].   Nevertheless, their due process claims against the Park County Defendants fail as a matter of law.  Mr. Caldwell presents no evidence that he had a protected property interest in his employment as a probationary employee.  If he had no property interest, he was not entitled to any process.  Ms. Caldwell's due process rights were not violated because she resigned her employment and was not constructively discharged.  Neither Plaintiff states any viable liberty interest claim because, Plaintiffs' conclusory and speculative beliefs to the contrary, the reasons for the adverse employment actions taken against them were never publicly disseminated by the Park County Defendants.

The record demonstrates that Plaintiffs received all of the due process required by the United States Constitution.   The touchstone for determining violations of the procedural protections of the Due Process Clause of the Fourteenth Amendment is notice and an opportunity to be heard prior to the government's deprivation of a protected property or liberty interest. *Goldberg v. Kelley*, 397 U.S. 254, 267 (1970); *Armstrong v. Manzo*, 380 U.S. 319, 333 (1976). For any procedural due process protections to attach, a public employee must have a protected property interest in continued employment.  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Derda v. City of Brighton*, 53 F.3d 1162, 1163-1164 (10th Cir. 1995).  Assuming the employee has a protected property interest, the determination next moves to whether the employee received sufficient due process prior to the termination of their public employment.

Plaintiffs now seem to assert they were entitled to "advance notice" (what ever that could mean) of the Defendants' plans for discipline.  The law does not support such a notion.  The Court in **Cleveland Bd. of Educ. v. Loudermill**, 470 U.S. 532 (1985) described the nature and scope of the pre-termination hearing after noting, "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." **Id.** at 545 (alteration added).  To satisfy due process, the "pre-termination hearing need not definitively resolve the propriety of the discharge." **Id.**  Instead, the purpose of a pre-termination hearing is to provide "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." **Id.** at 545-46.  As such, the Court held the pre-termination meeting must include three elements: (1) oral or written notice of the charges against the employee; (2) an explanation of the employer's evidence; and (3) an opportunity to present the employee's side of the story. **Id.** at 546.

In **Loudermill,** the Court concluded an additional component of due process was a post-termination hearing. **Id.** at 546-47.  The Court did not have the opportunity to discuss in detail the requirements for such a hearing because plaintiff merely challenged the timing not the substance of his post-termination procedures. **Id.**  However, subsequent cases have described an adequate post-termination hearing as a hearing before an impartial tribunal where the public employee has the opportunity to be represented by counsel, to present evidence, and to cross-examine adverse witnesses. *See, e.g.,* **Tonkovich v. Kansas Bd. of Regents**, 159 F.3d 504, 517-18 (10th Cir. 1998); **Workman v. Jordan**, 32 F.3d 475, 480 (10th Cir. 1994), *cert. denied,* 514 U.S. 1015 (1995); **Calhoun v. Gaines**, 982 F.2d 1470, 1476-77 (10th Cir. 1992).  Applying these

principles to the facts of the instant case demonstrates the Park County Defendants provided Plaintiffs with due process.

> **1.      Charles Caldwell Lacked a Protected Property Interest in Continued Employment as a Probationary Employee**

Charles Caldwell asserts he was terminated from his position as a probationary part-time case manager without due process of law.  In his Response, he claims he was not afforded notice and an opportunity to be heard nor to refute the allegations against him before Sheriff Wegener terminated his employment.  Such an argument puts the cart before the horse and must fail as a matter of law.

Mr. Caldwell worked as a part-time case manager in the jail for the PCSO from April 27, 2005 to February 10, 2006.  [¶2].  PCSO employment policies include a period of probation for all non-commissioned personnel of one (1) year from the date of employment, which may be extended for a period of up to three (3) months for training or disciplinary purposes.  [¶ 4].  Mr. Caldwell was a probationary employee at the time his employment with the Park County Sheriff's Office was terminated.  [¶¶ 2 & 4-5].  As such, Mr. Caldwell lacked any protected property or liberty interest in continued employment.  *See, e.g., **Walker v. United States,*** 744 F.2d 67, 68 (10th Cir. 1984) (probationary employee lacks property interest protected by due process); ***Richardson v. City of Albuquerque,*** 857 F.2d 727, 731 (10th Cir. 1988) (same); ***Grusendorf v. City of Oklahoma City,*** 816 F.2d 539, 540 n. 1 (10th Cir. 1987) (same); ***Codd v. Velger***, 429 U.S. 624, 624-25 (1977) (absence of protected property interest entitles no due process protection).

Mr. Caldwell makes no attempt to argue he did, in fact, have a protected property interest.  Instead, he focuses on the alleged failure to provide him notice and an opportunity to

refute the allegations that he fabricated portions of his employment application.  Because he had no property interest in continued employment, Mr. Caldwell was not entitled to notice and an opportunity to be heard prior to the termination of his employment.  It is axiomatic that if there is no property or liberty interest at stake, there is no concomitant right to due process.  The fact that Mr. Caldwell was placed on administrative leave with pay during an investigation of his conduct does not change his status as a probationary employee who is not entitled to due process.  Plaintiffs offer nothing to the contrary.  [*See* Response, pp. 27-28].

**2.  Vicki Caldwell Received Appropriate Process and Was Not Constructively Discharged**

Ms. Caldwell now challenges her three-day suspension without pay that occurred as part of her written warning in November 2005.  She appears to argue that because she did not receive prior notice of Undersheriff Gore's ***intent*** to discipline her, Undersheriff Gore violated her due process rights.  Such an argument, if accepted, would cripple public agencies by requiring them to first give notice of the intent to discipline and then wait some unspecified duration before actually meting out the appropriate discipline to their employees.  In the meantime, insubordinate employees could well wreck havoc on the day-to-day operations of the public agency.  Due process does not require such a rigid and unworkable system.

Ms. Caldwell received all of the process due her.  Assuming *arguendo* that a three-day suspension without more is a sufficient adverse action to trigger the protections of the Due Process clause, Ms. Caldwell was provided notice and an opportunity to be heard prior to the suspension being given to her.  Undersheriff Gore provided her with what he believed she did wrong and she was provided with the opportunity to present her side of the story.  [¶¶ 10-23; *see also*, Plaintiffs' Exhs. 16, 19].  Nothing else is required by due process, particularly given the

minimal sanction that is at issue with respect to her suspension.  There is no evidence that Ms. Caldwell contested this suspension at the time, nor did she write any rebuttal to Undersheriff Gore's reasons for disciplining her.  In fact, she expressly admitted she violated Undersheriff Gore's directives to her.  [¶ 18].

Further, any claim by Ms. Caldwell of a denial of due process related to her resignation of her employment in December 2005 fails because Ms. Caldwell cannot demonstrate she was constructively discharged.  It is undisputed Ms. Caldwell was not terminated; she resigned her position with the Park County Sheriff's Office.  [¶ 24].  Because she chose to resign, thereby voluntarily giving up any property interest she may have had in her job, she could not have been deprived of any due process rights she may have otherwise possessed.  To any extent Ms. Caldwell seeks to state a due process claim based on the allegation she was constructively discharged, such an allegation lacks any factual support and therefore must be dismissed as a matter of law.

Ms. Caldwell bears the burden of proving she was constructively discharged from her position with the Park County Sheriff's Office.  *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1386 (10th Cir. 1991).  Under a theory of constructive discharge, Plaintiff must prove her working conditions were so intolerable she had no choice but to resign her position with the Park County Sheriff's Office by demonstrating a reasonable person in the Plaintiff's position would have perceived continued work at her workplace intolerable.  *Sprague v. Thorn Ams.*, 129 F.3d 1355, 1367 (10th Cir. 1997); *Heno v. Sprint/United Management, Co.,* 208 F.3d 847, 858 (10th Cir. 2000).  "In order to survive a motion for summary judgment on a constructive discharge claim, [plaintiff] 'must allege facts sufficient to demonstrate under an objective test

that a reasonable person would have viewed her working conditions as intolerable.'" *Heno*, 208 F.3d at 858 (quoting *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998).  Under this inquiry, an employee's subjective beliefs are irrelevant and "if an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Jeffries*, 147 F.3d at 1233.  When a public employee resigns, unless she can prove a claim for constructive discharge, she is not entitled to any due process because she voluntarily relinquished her property interest in her job. *Singer v. Denver Sch. Dist. No. 1*, 959 F. Supp. 1325, 1331 (D. Colo. 1997) (citing *Parker v. Bd. of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992)).

Ms. Caldwell argues "[t]he evidence in our case strongly supports the idea that the actions in the latter half of 2005, and early in 2006, by the Sheriff and Undersheriff, Defendants Wegener and Gore, both directly and through the aid of Defendant Flint, were expressly designed to undercut Mr. Anthony and his friends and supporters in the PCSO, and to ruin any political ambitions he had for the future by wrecking his credibility with the public and depriving him of support."  [*See* Response, p. 29].  For the reasons set forth above at pages 6-9 of this Reply, such an argument is both unsupported by any record evidence and lacks logic.  Moreover, it is unclear how any actions purportedly taken against Mr. Anthony (if there were any evidence to support such a notion) affected Ms. Caldwell.

The undisputed facts of this case show only Ms. Caldwell was given a written reprimand and docked three days of pay for her failure to follow an express directive from Undersheriff Gore not to have any contact with Mr. Anthony.  Ms. Caldwell was also required to leave her office door open because another PCSO employee observed Ms. Caldwell behaving

suspiciously.  There is simply no basis upon which a reasonable person could find that Ms. Caldwell's discipline for an incident she readily admitted occurred and the requirement that her office door remain open constituted "intolerable" working conditions sufficient to state any viable constructive discharge claim.  Ms. Caldwell says her working environment was "hostile and unhappy" but fails to provide any specifics to substantiate such an allegation.  Ms. Caldwell cannot, as a matter of law, prevail on a claim for constructive discharge.  Because she was not constructively discharged, Ms. Caldwell has no viable due process claim.

3.       **Plaintiffs Have No Viable Liberty Interest Claim**

Plaintiffs now assert a claim of due process based on their liberty interest and argue that the Webber Park/Brief Synopsis was given "by someone" to a reporter from *The Fairplay Flume* and to a delegate to the Park County Republican Assembly.  [*See* Response, p. 34].  Neither the *Flume* reporter nor the delegate is before this Court.  Therefore, any statements attributed to them by Plaintiffs are hearsay and inadmissible to create a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(e)(1); ***Thomas v. IBM, Inc.***, 48 F.3d 478, 485 (10th Cir. 1995) (quoting ***Garside v. Osco Drug, Inc.***, 895 F.2d 46, 50 (1st Cir. 1990) ("hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'")).

Even if Plaintiffs could present admissible evidence that *The Flume* reporter and the delegate in fact received the Webber Park/Brief Synopsis, there is no evidence to suggest any of the Defendants gave it to them.  Plaintiffs speculate that the Defendants must have disclosed the Webber Park/Brief Synopsis based on their alleged access to it, but Plaintiffs have presented no

evidence that any Park County Defendant actually disseminated it and did so publicly. Dissemination of the Webber Park/Brief Synopsis for law enforcement purposes is simply not public disclosure.  Plaintiffs had months to conduct discovery and have unearthed no such evidence.  Plaintiffs state no viable liberty interest claim because they have presented no evidence suggesting that the reason for Mr. Caldwell's termination or Ms. Caldwell's suspension were ever publicly disseminated by the Park County Defendants to anyone.

Plaintiffs allege in their Complaint that the Park County Defendants published the Webber Park/Brief Synopsis and related documents. [Compl. ¶¶ 1, 19, 25-26].  Nothing about Ms. Caldwell's suspension or Mr. Caldwell's termination is contained in those documents.  [¶ 6]. And no evidence whatsoever exists that any of the Park County Defendants disclosed anything related to the personnel actions taken against the Plaintiffs publicly at all.  The absence of any public dissemination of any allegedly stigmatizing information concerning the Plaintiffs forecloses any liberty interest claim.  *See, e.g., Bishop v. Wood,* 426 U.S. 341, 348-349 (1976); *Lancaster v. Independent Sch. Dist. No. 5,* 149 F.3d 1228, 1235 (10th Cir. 1998).

## II.  PLAINTIFFS' STATE LAW CLAIMS FAIL BECAUSE PLAINTIFFS CANNOT DEMONSTRATE ANY OF THE PARK COUNTY DEFENDANTS ENGAGED IN WILLFUL AND WANTON CONDUCT AND ALSO FAIL ON THEIR MERITS

Plaintiffs admit their state law claims are tort claims under Colorado law, but argue the Defendants' conduct was willful and wanton.  [*See* Response, pp. 35-36].  Willful and wanton conduct connotes acts or omissions that extend beyond mere unreasonableness.  *Moody v. Ungerer,* 885 P.2d 200, 205 (Colo. 1994); *Terror Mining Company, Inc. v. Roter,* 866 P.2d 929, 933-34 (Colo. 1994).  "Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others."  *Forman v.*

*Brown,* 944 P.2d 559, 564 (Colo. App. 1996).  Plaintiffs present no evidence to substantiate that the Park County Defendants actually did any of the acts Plaintiffs ascribe to them.  [*See* Response, pp. 35-38].  Plaintiffs' state law claims fail for the same reasons as their First Amendment and due process claims fail.  They assert that the Park County Defendants engaged in a variety of acts rising to the level of willful and wanton conduct.  The long and short of it is, however, that Plaintiffs present no admissible evidence to support their subjective speculation and conjecture.  Therefore, the Court should dismiss Plaintiffs' state law claims.

Even if Plaintiffs somehow could establish the Park County Defendants' actions were even arguably willful and wanton, Plaintiffs' state law claims also fail on their merits.

## A.    PLAINTIFFS CANNOT PROVE THE PARK COUNTY DEFENDANTS DEFAMED THEM.

Plaintiffs assert the Park County Defendants defamed them by the statements included in the Webber Park/Brief Synopsis.  They say those statements were published in their personnel files, to other law enforcement agencies in Colorado, and to the local newspaper, *The Fairplay Flume*.  Because there is no evidence establishing that any of the Park County Defendants published any allegedly defamatory information to anyone, Plaintiffs' claim fails.

In Colorado, a claim for defamation "requires, at a minimum, publication of a false statement of defamatory fact."  ***Churchey v. Adolph Coors Co.***, 759 P.2d 1336, 1341 (Colo. 1988) (citing ***Burns v. McGraw-Hill Broadcasting, Co***., 659 P.2d 1351, 1360 (Colo. 1983)).  Plaintiffs present no evidence beyond their own suppositions to support the notion that the Park County Defendants published any allegedly defamatory matter about the Plaintiffs to anyone.  Plaintiffs assume and speculate that the Park County Defendants were involved in releasing the Webber Park/Brief Synopsis information publicly.  However, other than pursuant to legitimate

requests under the Colorado Criminal Justice Records Act or the Colorado Open Records Act, no actual evidence exists that any of the Park County Defendants were involved in any public dissemination of any such information.  [¶¶ 40-57].  Assuming *arguendo* Plaintiffs were not involved in an ongoing criminal enterprise, a notion the Park County Defendants may dispute at trial, if necessary, their claim for alleged defamation fails because there is no evidence that the Park County Defendants published any purportedly defamatory matter about them to anyone. Plaintiffs' own testimony belies their allegations.  [¶¶ 40-57].

Plaintiffs now apparently take issue with the Park County Defendants' ability to even investigate possible criminal activity within their jurisdiction.  The notion that law enforcement officials could be held civilly liable for sharing information with other law enforcement agencies in an effort to forestall criminal activity is absurd and ignores the Park County Defendants' qualified privilege to investigate alleged wrongdoing by Park County employees and others. Plaintiffs now argue that publication occurred when the Park County Defendants circulated the Webber Park Investigation/Brief Synopsis and the Witness/Victim List between themselves and to other law enforcement agencies in the course of their investigation.  They claim the Webber Park/Brief Synopsis and related documents had to have been kept under lock and key pursuant to a Park County Sheriff's Office policy relating to personnel records and therefore must have been released by Sheriff Wegener or Undersheriff Gore.  [*See* Response at p. 39, *see also*, Plaintiffs' Exh. 18].  Plaintiffs present no evidence, however, to substantiate their claim that a detective's investigative notes regarding an ongoing criminal investigation are somehow to be considered personnel records pursuant to Policy No. 320.  [*See* Plaintiffs' Exh. 18].

The Park County Defendants possessed a qualified privilege to investigate alleged criminal wrongdoing by the residents of Webber Park, including Plaintiffs. ***Thompson v. Public Serv. Co.***, 800 P.2d 1299, 1306 (Colo. 1990).  To overcome such a qualified privilege, Plaintiffs must show the Defendants "published the material with malice, that is, knowing the matter to be false, or acted with reckless disregard as to its veracity." ***Id.*** (quoting ***Churchey***, 759 P.2d at 1346).  There is no such evidence here.

Finally, Plaintiffs cannot state any defamation claim based on the disclosure of the Webber Park Investigation information to the Plaintiffs or others pursuant to legitimate requests pursuant to the Colorado Criminal Justice Records Act and the Colorado Open Records Act. Any disclosure by the Park County Defendants, to any extent any such disclosure occurred, in response to such requests should be subject to a qualified privilege.  It makes no logical sense to hold the Park County Defendants civilly liable in tort for their ***compliance*** with the terms of the CCJRA and the CORA.  Once again, absolutely no evidence exists the Park County Defendants released any such information with malice.

**B.      PLAINTIFFS CANNOT DEMONSTRATE THE PARK COUNTY DEFENDANTS INTENTIONALLY INFLICTED SEVERE EMOTIONAL DISTRESS ON THEM.**

Plaintiffs assert the Park County Defendants intentionally caused them severe emotional distress for substantially the same reasons they say the Park County Defendants defamed them. [Response, pp. 39-40].  To prove their claim for intentional infliction of severe emotional distress Plaintiffs must show: (1) the Park County Defendants engaged in extreme and outrageous conduct; (2) that the Defendants did so recklessly or with the intent to cause Plaintiffs severe emotional distress; and (3) that Defendants' conduct caused Plaintiffs severe emotional

distress. ***Coors Brewing Co. v. Floyd***, 978 P.2d 663 (Colo. 1999); ***Hoffsetz v. Jefferson County Sch. Dist.***, 757 P.2d 155, 159 (Colo. App. 1988).

Plaintiffs present no evidence that the Park County Defendants engaged in any extreme or outrageous conduct, that they did so recklessly or intentionally, or that Plaintiffs suffered severe emotional distress. Plaintiffs at page 40 of their Response also seem to misapprehend the notion that they must indeed prove that any such actions were done willfully and wantonly in order to overcome the sovereign immunity provided by the Colorado Governmental Immunity Act. There is no evidence of any willful or wanton conduct or any severe emotional distress experienced by either Plaintiff. For these reasons, Plaintiffs' intentional infliction of emotional distress claim must be dismissed.

Plaintiffs also make no effort to rebut the fact that the Colorado Workers' Compensation Act constitutes the exclusive remedy available to an employee for a co-employee's alleged commission of intentional infliction of emotional distress during the scope of the employment. ***Hoffsetz***, 757 P.2d at 159 (citing ***Kandt v. Evans***, 645 P.2d 1300 (Colo. 1982); ***Farmer v. Central Bancorporation, Inc.***, 761 P.2d 220 (Colo. App. 1988)). It is undisputed that Plaintiffs did not submit a claim to the Workers' Compensation Division alleging emotional distress. As a result, any such claim is barred.

Finally, because the disclosure of the Webber Park Investigation represents the factual predicate of the Plaintiffs' intentional infliction of emotional distress claim, [Compl. ¶¶ 1, 19, 26-27], this claim fails for the identical reasons as the Plaintiffs' defamation claim.

C.   **PLAINTIFFS HAVE NO EVIDENCE THE PARK COUNTY DEFENDANTS INVADED THEIR RIGHT TO PRIVACY.**

Plaintiffs again argue that their privacy was invaded for substantially the same reasons they claim they were defamed and subjected to intentional infliction of emotional distress by the Park County Defendants.  For the reasons the previous two tort claims fail, Plaintiffs' invasion of right to privacy claim also fails.

Inherent in a claim for invasion of privacy is the notion that the fact allegedly disclosed is true.  Otherwise, the plaintiff's claim would be for defamation.  Plaintiffs assert all of the statements made in the Webber Park Investigation/Brief Synopsis are untrue.  Assuming *arguendo* that Plaintiffs were not engaged in an ongoing criminal enterprise, it is simply not possible for Plaintiffs to recover on a claim for invasion of privacy if the statements allegedly publicized are untrue.

Plaintiffs present no evidence beyond their own conclusions and speculation that any of the Park County Defendants disclosed any information about them to anyone, much less publicized it.  Unlike a claim for defamation, to prevail on a claim for invasion of privacy, the private facts allegedly disclosed must be disclosed to the general public or a large number of persons.  ***Robert C. Ozer, P.C.***, 940 P.2d at 377-79.  There is no evidence to support the notion that the Park County Defendants disclosed anything about Plaintiffs to anyone. [¶¶ 40-57]. Hence, summary judgment must be granted on Plaintiffs' claim for invasion of privacy.

### III.  PLAINTIFFS HAVE NO EVIDENCE DEMONSTRATING THEY WERE NOT PAID ALL WAGES TO WHICH THEY WERE ENTITLED

Plaintiffs produced no evidence to support such a claim for unpaid wages.  [*See* Plaintiffs' Complaint, ¶¶ 51-53; *see also*, Response, generally].  Even if such evidence existed,

Colorado law exempts counties from the Colorado Wage Claim Act, C.R.S. § 8-4-101(5). Officers and agents of a corporation are not jointly and severally liable for the payment of wages. *Leonard v. McMorris*, 63 P.3d 323, 333 (Colo. 2003). The same reasoning applies to the Park County Defendants. Indeed, Plaintiffs never respond to this argument in their Response.

### IV.  PLAINTIFFS NEVER PLED A CLAIM FOR RELIEF PURSUANT TO THE CRIMINAL JUSTICE RECORDS ACT

Plaintiffs never plead a claim for relief pursuant to the Colorado Criminal Justice Reocrds Act, C.R.S. § 24-72-301, *et seq.*, and make no such arguments in their Response. Plaintiffs, therefore, have abandoned any attempt to state such a claim.

### CONCLUSION

In conclusion, for all of the aforementioned reasons as well as based upon all of the arguments and authorities contained in their Motion for Summary Judgment, Defendants Fred Wegener, Monte Gore, and Gregory S. Flint respectfully request that the Court enter summary judgment on all of the Plaintiffs Charles Caldwells' and Vicki Caldwells' claims against them in their entirety with prejudice, and for all other and further relief as this Court deems just and appropriate.

Dated this 12th day of August 2008.

Respectfully submitted,

s/ Katherine M.L. Pratt, Esq.

Andrew D. Ringel, Esq.
Katherine M.L. Pratt, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3453
Fax: 303-628-3238
ringela@hallevans.com
prattk@hallevans.com
**ATTORNEYS FOR DEFENDANTS FRED
WEGENER, MONTE GORE, GREGORY FLINT
AND STEPHEN GROOME**

<u>**CERTIFICATE OF SERVICE (CM/ECF)**</u>

I HEREBY CERTIFY that on the 12th day of August, 2008, I electronically filed the foregoing **PARK COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

James A. Reed, Esq.
jreedpc@aol.com
*Attorney for Plaintiffs*

Richard Lamphere, Esq.
Steven U. Mullens, Esq.
lampheresum@yahoo.com
SUMullens@aol.com
*Attorneys for Defendant Shawna White Owl*

Michael K. Obernesser, Esq.
mobernesser@gmail.com
*Attorney for Defendant Mark Damon*

s/Martha Fiser, Secretary to
Andrew D. Ringel, Esq.
Katherine M.L. Pratt, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202-2052
303-628-3453
Fax: 303-628-3238
ringela@hallevans.com
prattk@hallevans.com
**ATTORNEYS FOR DEFENDANTS FRED WEGENER, MONTE GORE, GREGORY FLINT AND STEPHEN GROOME**

25