IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-000371-RPM-MEH

CHARLES CALDWELL, and
VICKI CALDWELL,

Plaintiffs,

v.

FRED WEGENER,
MONTE GORE,
GREGORY S. FLINT,
SHAWNA WHITEOWL, and
MARK DAMON

Defendants.

## RESPONSE TO DEFENDANT WHITEOWL AND DAMON'S MOTION FOR COSTS AND ATTORNEYS' FEES

Plaintiffs Caldwell, by and through their attorney James A. Reed, Esq., hereby files this Response to the Motion for an Award of Costs and Attorneys' Fees filed in this case by Defendants Whiteowl and Damon, as follows:

1.      This Court granted Defendants' Motions for Summary Judgment as to the Plaintiffs' claims under Section 42 U.S.C. § 1983, entering its judgment on January 5, 2009. The Court then dismissed the remaining State claims against these Defendants for lack of subject matter jurisdiction. Those remaining State claims against these so-called citizen Defendants are defamation *per se,* intentional infliction of emotional distress, and invasion of rights of privacy.

2.     Defendants Whiteowl and Damon have each since filed Motions for Awards of

Costs and Attorneys' Fees against the Plaintiffs pursuant to section 42 U.S.C. § 1988(b), D.C.

Colo. LCivR, Rule 54.3, and 28 U.S.C. § 1920(4).[1]

## ATTORNEYS' FEES

### Whether attorneys' fees should be awarded at all.

Quoting directly from *Mitchell v. the City of Moore, Oklahoma*, 218 F.3d 1190, at 1203

(10th Cir. 2000):

> While a prevailing plaintiff ordinarily is entitled to attorney fees, *see*
> *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), a
> prevailing defendant in a civil rights action may recover attorney fees only "if the
> suit 'was vexatious, frivolous, or brought to harass or embarrass the defendant.' "
> *Utah Women's Clinic, Inc. v. Leavitt*, 136 F.3d 707, 709 (10th Cir.1998) (per
> curiam) (quoting *Hensley*, 461 U.S. at 429 n. 2, 103 S.Ct. 1933). This is a difficult
> standard to meet, to the point that rarely will a case be sufficiently frivolous to
> justify imposing attorney fees on the plaintiff. *See Clajon Production Corp. v.*
> *Petera*, 70 F.3d 1566, 1581 (10th Cir.1995). The dismissal of claims at the
> summary judgment stage does not automatically meet this stringent standard. *See*
> *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir.1995).

The Plaintiffs' Complaint in this case alleged that they had been fired from their Park

County Sheriff's Department jobs as a result of baseless criminal allegations had been made

against them by these Defendants given to Detective Gregory Flint, who had asked them to keep

these Plaintiffs under their private surveillance and to report any suspicious behavior.   The

allegations made by these Defendants then became the central focus of a report filed by

Detective Flint with his department.   Shortly after the filing of this report, disciplinary actions

were taken against both Plaintiffs, the Sheriff's Office forcing Mrs. Caldwell to quit her job with

---

[1] A Clerk's cost hearing has been held as to each of these Defendants (Ms. Whiteowl on February
5, 2009, and Mr. Damon on March 3, 2009) and decisions made thereon in keeping with directives from
the 10th Circuit, and D.C. Colo. LCivR, Rule 54.3, and 28 U.S.C. § 1920(4). The remainder of this
pleading will deal with the request for an award of statutory attorneys' fees.

the Sheriff's Department, and Mr. Caldwell being suspended and ultimately fired on what he knew to be pretextual grounds.  Shortly after their discharge, the report was released to other law enforcement agencies and to the public (a delegate to the county political assembly, and to the local newspaper), which is how these Plaintiffs first learned of the allegations of criminality. The timing of the discipline, the pretextural nature of the grounds for discipline, and the fact that these Plaintiffs had openly befriended a person reasonably expected to run for Sheriff against the then-existing Sheriff, all gave these Plaintiffs reason to believe that their firing was for political reasons, and that the Sheriff's Office had been supported in this effort by the wrongful conduct of these Defendants. The Plaintiffs' alleged that their law enforcement careers had suffered professional stigma as a result of these actions.

In its January 5, 2009, Order granting the summary judgment here, this Court did in fact find that Det. Flint had filed the alleged report with the Park County Sheriff's Office (while the Plaintiffs were still employed there); that it repeated the numerous allegations of serious criminal activity involving these Plaintiffs that had been made by Defendants Whiteowl and Damon; that this report had in fact been circulated to a number of other law enforcement agencies;[2] and that the allegations of the report had been found by CBI to be without substance.  All of that said, the Court went on to rule that against a summary judgment motion, the Plaintiffs had failed to provide sufficient evidentiary support for the alleged conspiracy to violate a federally protected right, and that either Defendants Whiteowl or Damon were motivated by a desire to harm the Plaintiffs by causing the loss of their employment in the Sheriff's Office.

---

[2] The Order is silent as to the dissemination of this report publicly to a County Assembly delegate and to the local newspaper, despite affidavits to that effect being provided. See, Exhibits to Plaintiffs' Responses to Motions for Summary Judgment.

There are two cases significantly on point illustrating recent application of the *Hensley* standard in this type of a lawsuit. In *Mitchell, supra,* the trial court faced a claim in which a police captain in the Moore City, Oklahoma Police Department had been fired, he alleged, for espousing his police union sympathies. He made claims under § 1983, as well as State tort law, alleging a conspiracy amongst various governmental officers. The Defendants' summary judgment motion (just as in our case) argued first that Oklahoma was an "at-will" employment State and that Mr. Mitchell had failed to establish that any evidence proved the existence of an employment contract creating either a property or liberty interest in his job. The trial court agreed. The summary judgment motion next argued (also as in our case) that insufficient evidence had been produced to show that Mr. Mitchell had engaged in federally protected behavior or that he had suffered retribution for it.

Summary judgment was granted against Mr. Mitchell on all claims in the case, both federal and State. Significantly to our analysis, the Defendants' request for attorneys' fees under § 1983 in the Mitchell case was denied. The Defendants appealed the denial of attorneys' fees. The 10th Circuit Court of Appeals upheld the decision denying attorneys' fees, stating:

> The district court specifically avoided finding Captain Mitchell brought the lawsuit for an improper purpose. The district court noted "[t]he Order only resolved that no legal remedy [was] available to [Captain Mitchell] under the facts as supported by the evidence." As noted earlier, the district court determined Captain Mitchell's response to the summary judgment motion was inadequate, but that is an entirely different finding than branding the suit itself frivolous. We see nothing in this record that requires a holding the district court abused its discretion in denying attorney fees, and we affirm.

*Id.,* at 1203.

The second case of note is *Seeds v. Lucero*, 207 F.Supp.2d 1297 (D.C., N.Mex., 2002), in which the trial court granted a summary judgment against the Seeds plaintiffs in a § 1983

lawsuit. In that case, the Seeds had alleged a conspiracy between civilian and government officials to deprive them of their civil rights (to oppose an annexation request by the private citizen defendants). Judge Black there found that, even though evidence had been presented which suggested that the citizen Defendants intended to harass the Plaintiffs privately, the evidence was not sufficient to show that there was any conspiracy with government officials to harass or a nexus between this harassment and a federally protected right. *Id.* at 1299:

> The fact that the Seeds failed, after the close of discovery, to present evidence establishing a nexus between the Defendants' alleged harassment and the violation of a federal right does not render their Section 1983 claim groundless [citing *Mitchell, supra*]. . . .
>
> Like the courts in the *Mitchell* case, this Court found that the Seeds failed to identify a property interest to which due process protection attached and that the Seeds failed to present sufficient evidence to withstand summary judgment on their free association and equal protection claims. Critically, also like the courts in the *Mitchell* case, this Court did not find that the Seeds' lawsuit was groundless, frivolous, or unreasonable. . . .

In this regard, our case is exactly like *Mitchell* and *Seeds*, *supra*. Applying the *Mitchell* and *Seeds* rationales to our case, the record here similarly suggests no improper motive on the part of the Plaintiffs. This Court here did grant a summary judgment, finding that insufficient evidence ultimately was presented as to the existence of a federally protected property or liberty interest in their employment; as to the intent of the individual citizen Defendants (that the Plaintiffs would lose their jobs); or that they had entered into any agreement with the County Defendants to deprive the Plaintiffs of federally protected rights. But the Court did find that Detective Flint had filed the alleged report with the Park County Sheriff's Office (while the Plaintiffs were still employed there); that this report restated the numerous unfounded allegations of serious criminal activity involving these Plaintiffs that had been made by Defendants

Whiteowl and Damon; that this report was in fact circulated to a number of other law enforcement agencies; that the allegations of the report had been found by CBI to be without substance; and that these Plaintiffs had lost their jobs at the Sheriff's Office.   Mr. Damon admitted having been asked and agreeing to keep the Plaintiffs under surveillance for Detective Flint, and that the County provided cell phone equipment to Ms. Whiteowl during this time. (Exhibit 1).   Detective Flint admitted in his testimony that he provided paging equipment to assist these Defendants while this was going on. (See, Exhibit 2).  Ms. Whiteowl admitted that she had intentionally overstated the allegations in the report to get the Sheriff's Office to pay more attention to the problems she for years had claimed having in her neighborhood (Exhibit 3).

Although this Court ultimately found that insufficient evidence was provided, *for summary judgment purposes*, as to what these Defendants must have intended vis. a conspiracy to deprive the Plaintiffs of a federally protected right, *Mitchell* and *Seeds* show that this does not support an award of attorney's fees under the statute.  Finding that a suit is "sufficiently frivolous to justify imposing attorney's fees on the Plaintiff" (*Mitchell*, at 1203), is and should be a rare order requiring a higher standard.  Plaintiffs here contend that they proceeded from the colorable and reasonable belief that these citizen defendants cooperated with the Sheriff's Office in ginning up false accusations of serious wrongdoing, which were then used as the background to remove these Plaintiffs from their jobs.  The information so recklessly thrown against these Plaintiffs was disseminated to other law enforcement agencies, and to the public (in an obviously political setting, just prior to the County Assembly), resulting in stigma to the Plaintiffs, effectively keeping them from continuing in their law enforcement careers.

These Plaintiffs knew that the accusations made by the citizen Defendants against them were baseless. This Court found that CBI had confirmed this fact after its own independent investigation. Counsel respectfully suggests to this Court that it cannot be said that the Plaintiffs were "wholly unreasonable" in believing that these Defendants, who knowingly and falsely alleged serious criminal behavior (including murder) against them, knowing that they were employed in law enforcement, consciously recognized the significant risk that these Plaintiffs would lose their jobs. In fact, both of the Plaintiffs did lose their jobs, within the time span of only about eight weeks of each other. There is no evidence that the Plaintiffs engaged in the lawsuit here for improper motives, or that they had adopted wholly unreasonable beliefs as to what had happened to them. This Court should find that the lawsuit here was not frivolous, unreasonable, without foundation, or interposed for improper purposes.[3]

**Reasonability of amount of attorneys fees being sought**

Determination of the amount of a fee award under 42 U.S.C. §1988 involves the exercise of considerable discretion by the Court. The time records of the requesting attorney in support of the award must be sufficiently detailed and contemporaneous to allow a meaningful and objective analysis by the Court. *Ramos v. Lamm*, 713 F.2d 546, at 553 (10th Cir. 1983). In examining the reasonableness of the hours reported, the district court should also examine the

---

[3] To the argument that this Court cautioned the Plaintiffs about clarifying the role of these Defendants as "state actors" at the Scheduling Conference, it should be noted that the Court further indicated that this could be done throughout the discovery process. In discovery, it was learned in fact that these Defendants had conducted surveillance at the request of and in concert with the investigation of Defendant Detective Flint and that Defendant White Owl had admitted purposefully falsifying these serious claims to get herself better heard by the authorities. In another area where this Court suggested cleaning up the pleadings at the Conference, Plaintiffs took that step: Park County was voluntarily dismissed as a party. When it was reasonably felt by Plaintiffs that the discovery had not supported continuing to pursue a Defendant, that Defendant (Mr. Groome) was voluntarily dismissed from the case upon Plaintiffs' own motion. This is not a case where the Plaintiffs blindly and recklessly lurched forward without any effort to act responsibly. Cf. *Crabtree v. Muchmore*, 904 F.2d 1475 (10th Cir.1990).

number of hours allotted to specific tasks. Unreasonable amounts of time billed for any one task should not be awarded. Time spent that would ordinarily be absorbed in a private firm's general overhead and not billed to clients, should not properly be awarded against adversaries. See, *Id.*, at 554.

It is also suggested that where the federal claims are decided in a summary judgment decision, but attendant State claims are then left to be decided by State courts, some proration of fees would be appropriate. The total time spent on a case by the attorneys generally applies to all of the issues involved in the case, not just the one federal claim. A deposition may deal with the issues in the federal claim, it is true, but also involve a host of State claims (as to both issues of liability and damages) as well. Section 1988 does not seem to allow for an award of fees as to State claimed matters.

In the event that some fee award is being contemplated, it is suggested that the fees being sought are excessive for a couple of reasons.

In our case now before this Court, the billings for Mr. Damon reflect that Mr. Hartley did the initial intake with the client, a first meeting with Co-Defendant's counsel and the initial phone call with the undersigned. For this he billed 2½ hours at $500.00 per hour (total $1,250.00). With the utmost respect for Mr. Hartley, who is both an excellent attorney and a friend to the undersigned, it is not demonstrated why his particular talents were needed for the modest work being performed at that early stage, or how this charged fee advanced the case anywhere near the amount of fees incurred. The case was taken over from there by Mr. Obernesser, a younger up and coming attorney, at half the rate. *Ramos, supra.,* seems to give this Court the discretion to decide that the initial contact with the client and counsel by an

8

attorney who later does not participate in the case is something a firm might otherwise refrain

billing a client for. If it wouldn't be billed to a client, *Ramos* suggests it shouldn't be billed to an

adversary.

Mr. Obernesser submitted his bill to the Court for 79¼ hours to research and draft the

opening summary judgment motion for Mr. Damon in this case, 29¾ hours to draft the reply to

the plaintiffs' response on summary judgment, and 17½ hours to prepare for and argue summary

judgment before this Court. Again, the undersigned has full respect for Mr. Obernesser as a

diligent and gifted young counsel, someone the undersigned wishes to develop a better friendship

with in the future, but the amount of time here seems inordinate. This Court, in *Cunico v Pueblo*

*School District No. 60*, 705 F.Supp 1466, at 1468 (D.C. Colo. 1988), when faced with numbers

very much like these, and with the matter taken completely through trial, reduced them

significantly.[4] A hearing as to the reasonableness of such fees might be appropriate.

With respect to the attorney fee request for Defendant Whiteowl, it should be noted that

attorneys Mr. Lamphere and Mr. Mullens adopted a reduced role in this case, basically signing

the joint motions for their client with Defendant Damon. Yet they still filed a bill with the Court

for $21,475.80 in attorney's fees. Mr. Mullens was not actively involved in most of this matter.

The lion's share of time spent by Mr. Lamphere seems to have consisted of attending or

travelling to and from the depositions in this case, which may or may not have been used in the

motion for summary judgment by his client. Most firms would bill travel time at a reduced rate.[5]

---

[4] In that case the issues were apparently much more complicated, given the United States Supreme Court's having yet to make its position on reverse discrimination entirely clear.

[5] It should be noted that these counsel also sought reimbursement at 51 cents a mile for these same trips in their Bill of Costs.

**CONCLUSION**

This Court should rule that no award of attorneys fees should be granted either Defendant Whiteowl or Damon in this matter against the Plaintiffs under 42 U.S.C. § 1988(b), D.C. Colo. LCivR, Rule 54.3, and 28 U.S.C. § 1920(4), in that Plaintiffs' § 1983 claim was neither vexatious, frivolous, or brought to harass or embarrass the defendant. *Mitchell v. the City of Moore, Oklahoma*, 218 F.3d 1190, at 1203 (10th Cir. 2000); and *Seeds v. Lucero*, 207 F.Supp.2d 1297 (D.C., N.Mex., 2002).

To the extent that this Court might decide otherwise, the fees sought by these Defendants to be awarded to them should be deemed excessive, and reduced in keeping with the precedent. See, *Ramos v. Lamm*, 713 F.2d 546, at 553 (10th Cir. 1983); and *Cunico v Pueblo School District No. 60*, 705 F.Supp 1466, at 1468 (D.C. Colo. 1988).

Respectfully submitted this 6th day of March, 2009.

By *Plaintiffs' counsel*:

s/ James A. Reed
James A. Reed, Esq. (Colo. Reg. No. 7796)
320 South Cascade Avenue
Colorado Springs, CO   80903
Phone 719-636-9343
Fax   719-633-2355

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 6th day of March, 2009, the foregoing document was served via ECM/Pacer to:

*Attorney for Defendants*
*Wegener, Gore, and Flint:*
Katherine M.L. Pratt, Esq.
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1125 17th Street, Suite 600
Denver, CO  80202-2052
Prattk@hallevans.com
Ringela@hallevans.com

*Attorney for Defendant Whiteowl:*
Richard Lamphere, Esq.
Steven U. Mullens, P.C.
105 East Moreno Avenue
Colorado Springs, CO  80903
lampheresum@yahoo.com

*Attorney for Defendant Damon:*
Michael Obernesser, Esq.
Dennis W. Hartley, P.C.
1749 South 8th Street, Suite 5
Colorado Springs, CO  80906
mobernesser@gmail.com

 s/  Julia Vendeland
Julia Vendeland
James A. Reed, P.C.
320 S. Cascade Avenue
Colorado Springs, CO  80903
Tel. (719) 636-9343 / Fax (719) 633-2355